**FLEET BANK OF MAINE, Plaintiff,**

v.

**Patricia WILSON a/k/a Patricia A. Patenaude, Defendant.**

**Civ. No. 91–0071–P.**

United States District Court, D. Maine.

Dec. 10, 1991.

S. Levis, Gene Auty, Drummond Woodsum Plimpton & MacMahon, Portland, Me., for plaintiff.

Thomas Jewell, Johnson, Jewell & Boutin, Portland, Me., for defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

This case arises out of a foreclosure of a mortgage by Plaintiff Fleet Bank of Maine (hereinafter "Fleet Bank") against Defendant Patricia Wilson a/k/a Patricia A. Patenaude (hereinafter "Defendant" or "Wilson"). Originally, Maine Savings Bank (hereinafter "MSB") sought foreclosure of the mortgage given by Defendant to secure a guaranty. MSB is the assignee of the

original note and mortgage holder. On February 1, 1991, MSB was declared insolvent by order of the Cumberland County Superior Court. On that date, the Federal Deposit Insurance Corporation (hereinafter "FDIC") issued an Order of Appointment of Receiver appointing itself as Receiver for Maine Savings Bank. Also on that date, the FDIC as Receiver of Maine Savings Bank, the FDIC, and Fleet Bank of Maine entered into a Purchase and Assumption Agreement whereby Fleet Bank of Maine purchased certain assets held by the FDIC as Receiver, including the subject Note, Guaranty and Mortgage. Fleet Bank was substituted for Maine Savings Bank as Plaintiff on March 8, 1991.[1]

The case involves the claim of Plaintiff Fleet Bank for foreclosure of a mortgage and sale of the property in accordance with Title 14 M.R.S.A. § 6322 *et seq.*[2] The Court now has before it Plaintiff's Motion for Summary Judgment filed on July 11, 1991. Defendant did not respond to the motion.

### I. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litiga-

tion, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2509, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2509]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> > [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be entered.

> *Anderson*, 477 U.S. at 249–59, 106 S.Ct. at 2510–16.

*Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989).

In general, under Local Rule 19(c), a party who fails to file a timely objection to a motion is deemed to have waived objection. It is well-established law in this district, however, that Federal Rule of Civil Procedure 56 requires the Court to examine the merits of a motion for summary judgment even though a nonmoving party fails to object as required by Local Rule 19(c). *Gagne v. Carl Bauer Schraubenfabrick GmbH*, 595 F.Supp. 1081, 1084

---

1. This case was originally before the Superior Court of the State of Maine for the Judicial District of Cumberland County but, on February 28, 1991, the FDIC removed the state court action to this Court under 12 U.S.C. section 1819(b)(2)(B) and 28 U.S.C. section 1441.

2. Defendant Wilson had filed a counterclaim but, pursuant to the Court's endorsement on May 30, 1991 with respect to an Order to Show Cause dated March 8, 1991, the Court dismissed the counterclaim without prejudice.

(D.Me.1984); *McDermott v. Lehman*, 594 F.Supp. 1315, 1320 (D.Me.1984). Although a total waiver of objection to a motion for summary judgment is not imposed under Local Rule 19(c), a party who fails to object in a timely fashion is deemed to have consented to the moving party's statement of facts to the extent that statement is supported by appropriate record citations. *Lehman*, 594 F.Supp. at 1321.

In this case, the material facts set forth and supported by Plaintiff and deemed consented to by Defendant are as follows.

## II. *Facts*

This foreclosure action arises out of a commercial loan relationship between American Window Systems, Inc. (hereinafter "American") and MSB. On January 29, 1989, NEB Custom Windows, Inc. (hereinafter "NEB") executed and delivered to American a promissory note in the original principal amount of $125,000 (hereinafter "Note"). The Note secured payment of an account receivable owed by NEB to American, for the purchase of American inventory. Douglas Patenaude was the principal officer and shareholder of NEB and the ex-husband of Defendant Wilson.

On March 23, 1989, Defendant executed a limited nonrecourse guaranty (hereinafter "Guaranty") to secure payment of the Note. To secure the Guaranty, Defendant executed and delivered to American a Mortgage Deed (hereinafter "Mortgage") dated March 23, 1989, which conveyed a second priority security interest in certain real property. Pursuant to the terms of the Guaranty, Wilson agreed to pay American, its successor or assigns, a sum not to exceed $50,000. The Guaranty also provides for collection costs, including reasonable attorney's fees. Recourse for payment of

the Guaranty was limited to the real estate described in the mortgage.[3] American subsequently defaulted under its obligations to MSB and, in connection with the liquidation of American on or about February 5, 1990, American assigned the Note, Mortgage, and Guaranty to MSB on the same date.

NEB defaulted under the terms of the Note by failing to pay any of the monthly installments of principal, or any portion thereof, due under the Note. As of January 26, 1990, the amount due under the Note included $125,000 in unpaid principal and $14,413.08 in unpaid accrued interest. Wilson failed to pay the amounts due under the Guaranty, which constituted a breach of condition of the Mortgage.

On March 23, 1990, MSB commenced a civil action for foreclosure of the Mortgage. Defendant raised four affirmative defenses that challenge the validity of the transaction, namely, failure to accept the guaranty, failure of consideration, fraudulent inducement, and unconscionability. Plaintiff filed a Motion for Summary Judgment on July 9, 1991, asserting that "these defenses are barred as a matter of law by the sweeping and all inclusive protections afforded Fleet as the assignee of the FDIC under federal common and statutory law." Memorandum of Law in Support of Motion of Fleet Bank of Maine for Summary Judgment at 1 (hereinafter "Plaintiff's Memorandum"). Plaintiff concluded that "[t]he preclusive effect of federal law on Defendant's affirmative defenses and the absence of a genuine issue of material fact with respect to Fleet's affirmative case, entitled Fleet to summary judgment." *Id.* at 1–2. For the reasons that follow, the Court agrees and grants Plaintiff's motion for summary judgment.

---

**3.** The Guaranty stated in pertinent part:
   [T]he undersigned guaranties to American, its successors and assigns, full and prompt payment when due of NEB's indebtedness to American evidenced by a Promissory Note dated January 25, 1989, from NEB to American in the original principal amount of $125,-000 (the "Note") and all costs of enforcement or collection thereof and hereof, *PROVIDED, HOWEVER,* that the liability of the Undersigned hereunder shall not at any time exceed FIFTY THOUSAND DOLLARS ($50,000),

PLUS all costs and expenses of enforcement and collection under the Guaranty including reasonable attorney's fees, and *PROVIDED, FURTHER, HOWEVER,* that the liability of the undersigned shall be limited solely to the undersigned's rights in certain real estate which the undersigned has mortgaged to American.
Affidavit of William J. Mann in Support of Motion of Fleet Bank of Maine for Summary Judgment, Exhibit B (hereinafter "Affidavit").

## III. *Discussion*

### A.

Pursuant to Maine law, the Court shall determine (1) whether there has been a breach of condition of the mortgage; (2) the amount due thereon including reasonable attorney's fees and court costs, and (3) the order of priority and the amount due, if any, to other parties that may appear. 14 M.R.S.A. § 6322 (Supp.1990). The Court concludes that no genuine issue of material fact exists as to any of these elements under Maine law. *See* Affidavit, ¶ 13, 16 (hereinafter "Affidavit").

With respect to the breach of condition of the mortgage, Defendant admitted in her Answer that she has not paid any amounts that may be due under the Guaranty. Answer and Counterclaim of Patricia Wilson (hereinafter "Answer"), ¶ 12. She further admitted that she failed to pay timely amounts due Portland Savings Bank, n/k/a Peoples Heritage Savings Bank, the holder of a first mortgage on the property, and that this failure constitutes a breach of condition of the Mortgage. Answer, ¶ 13.

With respect to the amount due under the mortgage, Wilson guaranteed:

> full and prompt payment when due of the [Note] and all costs of enforcement or collection provided, however, that the liability of Wilson shall not at any time exceed $50,000.00 plus all costs and expenses of enforcement and collection including reasonable attorney's fees, and provided further, however, that the liability of [Wilson] shall be limited only to [Wilson's] rights in certain real estate which [Wilson] has mortgaged to American.

Complaint for Foreclosure by Civil Action, ¶ 5; Ex.B. NEB failed to pay any of the monthly installments of principal, or any portion thereof due under the Note. Accordingly, under the terms of the Guaranty, Defendant owes Plaintiff $50,000 together with all costs and expenses of enforcement and collection under the Guaranty, including reasonable attorney's fees.

Lastly, with respect to the order of priority and the amount due to other parties, the record does not show that any party other than Plaintiff has first priority or that any other party is due any amount. Thus, Plaintiff has satisfied the aforementioned elements under Maine law and has established its affirmative case, which is uncontested by Defendant. No genuine issue of material fact exists as to any of these elements.

Defendant raises four affirmative defenses. For the reasons that follow, the Court finds that these defenses are barred as a matter of law under the *D'Oench Duhme* doctrine and its codification under Title 12 U.S.C. § 1823.

### B.

The *D'Oench Duhme* doctrine, a common law estoppel doctrine, prohibits defendants from using "secret agreements" to defend against efforts by the FDIC to collect on notes that it has acquired from a failed bank. *See D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942). The purpose of this doctrine is to protect the FDIC from "misrepresentations and secret agreements which might result in it incorrectly assessing the value of bank holdings for institutions which it insures, makes loans, or acquires in its corporate capacity." *Federal Deposit Insurance Corp. v. P.L.M. International, Inc.*, 834 F.2d 248, 252 (1st Cir.1987). Consistent with this purpose, the *D'Oench Duhme* doctrine does not require a showing that the defendant has an intent to defraud. *Id.* at 252–53. The only element of fault necessary to the invocation of the doctrine is the borrower's failure to reduce the agreement to writing. *Timberland Design, Inc. v. First Service Bank for Savings*, 932 F.2d 46, 49 (1st Cir.1991).[4]

---

**4.** The applicability of this doctrine is not limited to the FDIC in its corporate capacity as the insurer of a failed institution's deposits. The FDIC may also assert the doctrine in its role as the receiver of a failed institution. *Id.* Moreover, bridge banks may assert the doctrine as the assignees of the FDIC as the receiver of a failed institution. *Kilpatrick v. Riddle,* 907 F.2d

The *D'Oench Duhme* doctrine is no longer strictly common law. Section 13(e) of the Federal Deposit Insurance Act of 1950 and section 214(a) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 both incorporated and clarified the doctrine. *See* 12 U.S.C. §§ 1823(e), 1821(n)(4)(I). Section 1823(e) codifies the *D'Oench Duhme* doctrine and provides in relevant part:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section, or Section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement
>
> 1) is in writing;
>
> 2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution;
>
> 3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee; and
>
> 4) has been, continuously, from the time of its execution, an official record of the depository institution.[5]

Courts have interpreted section 1823(e) as precluding defenses of obligors on obligations that were previously assigned to the insolvent bank and subsequently assumed by the FDIC or its assignee. *See,* *e.g., Chatham Ventures, Inc. v. Federal Deposit Insurance Corp.,* 651 F.2d 355, 360–61 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982); *Federal Deposit Insurance Corp. v. Hoover–Morris Enterprises,* 642 F.2d 785, 787–88 (5th Cir.1981). Moreover, the Court of Appeals for the First Circuit has extended the application of section 1823(e) to guaranty agreements. *P.L.M. International,* 834 F.2d at 254.

■ The Court need go no further than the requirement of a writing to find that Defendant's affirmative defenses to Plaintiff's collection of the money due under the Guaranty present no genuine issue of material fact and therefore must fail.[6] Each of Defendant's four affirmative defenses is predicated upon the existence of an alleged oral representation or assurance. First, her defense of failure of consideration is premised upon an alleged oral understanding that she would receive financial help or new windows from Patenaude in exchange for executing the Guaranty and Mortgage. Deposition of Patricia Wilson, at p. 41, lines 18–22.[7] Second, her defense that the Guaranty is unenforceable for failure of American to accept the guaranty is premised upon an oral representation that liability was dependent on acceptance of the Guaranty by American. Third, her defense of fraudulent misrepresentation is also premised on alleged oral inducements from Patenaude that NEB would be able to pay the debt to American and that he would pay her first mortgage payments and install new windows.[8] Lastly, her de-

---

1523, 1528 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991).

**5.** The Supreme Court gave a very broad definition to the "agreements" that must meet the four requirements of this statutory estoppel doctrine:

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of warranted fact.

*Langley v. Federal Deposit Insurance Corp.,* 484 U.S. 86, 92–93, 108 S.Ct. 396, 401–02, 98 L.Ed.2d 340 (1987).

**6.** The fact that these alleged representations and agreements occurred between Defendant Wilson and third parties, namely, Patenaude, is not relevant. *See Hoover–Morris Enterprises,* 642 F.2d at 787–88.

**7.** No evidence exists of a written agreement which supports Defendant's assertion that Patenaude's performance was a condition precedent to her liability.

**8.** Courts have expanded the *D'Oench Duhme* doctrine to bar any defense that arises out of fraudulent misrepresentations. *See, e.g., Federal Deposit Insurance Corp. v. Cardinal Oil Well Servicing Co.,* 837 F.2d 1369, 1372 (5th Cir. 1988); *Federal Deposit Insurance Corp. v. Inves-*

fense of unconscionability is predicated on the same alleged false assurances from Patenaude.

Defendant neither alleges nor offers any evidence that suggests the existence of any writing with respect to these alleged representations and assurances. As a result, both the common law *D'Oench Duhme* doctrine and its codified statutory provisions estop Defendant from asserting the only defenses that she has raised against Plaintiff's Complaint.[9] Therefore, the Court concludes that no genuine issue of material fact exists as to the existence of all the statutory and common law requirements for agreements enforceable against bridge banks.

Accordingly, it is ORDERED that Plaintiff's Motion for Summary Judgment be, and it is hereby, GRANTED. Judgment for Fifty Thousand Dollars ($50,000), with interest thereon within the period of redemption, together with collection costs, including reasonable attorney's fees, and for foreclosure and sale of the realty subject to the mortgage shall enter. It is hereby FURTHER ORDERED that Plaintiff file on or before December 23, 1991 a proposed order for entry of judgment.

Counsel shall confer forthwith and attempt to agree upon collection costs, including reasonable attorney's fees. If they are unable to agree, the parties shall file written submissions on the issue of fees on or before December 23, 1991, and the Court will resolve the matter upon the written submissions.

SO ORDERED.

---

*tors Associates X., Ltd.,* 775 F.2d 152, 156 (6th Cir.1985).

9. With respect to the defense of fraudulent misrepresentation, courts have applied the *D'Oench Duhme* doctrine in barring any defense arising out of such misrepresentation. *See, e.g., Federal Deposit Insurance Corp. v. Cardinal Oil Well Servicing Co.,* 837 F.2d 1369, 1372 (5th Cir. 1988); *Investors Associates X., Ltd.,* 775 F.2d at 156.