**FLEET BANK OF MAINE, Plaintiff,**

v.

**Harvey E. PRAWER and Gilbert Prawer, Defendants and Counterclaim Plaintiffs,**

**and**

**Federal Deposit Insurance Corporation, Counterclaim Defendant.**

Civ. No. 91–0074–P–C.

United States District Court, D. Maine.

April 3, 1992.

Andrew Horton, Verrill & Dana, William Shumaker, Alexandra Treadway, Portland, Me., for Fleet Bank of Maine.

Joseph Hahn, Anthony Perkins, Gregory Tselikis, Bernstein, Shur, Sawyer, & Nelson, Portland, Me., for defendants Harvey and Gilbert Prawer.

William Shumaker, Andrew Horton, Verrill & Dana, Portland, Me., for FDIC.

## ORDER GRANTING SUMMARY JUDGMENT OF PLAINTIFF FLEET BANK OF MAINE AND COUNTERCLAIM DEFENDANT FEDERAL DEPOSIT INSURANCE CORPORATION

GENE CARTER, Chief Judge.

This case involves the claims of Plaintiff Fleet Bank of Maine ("Fleet Bank" or "Plaintiff") for collection of amounts due under two promissory notes that are in default.[1] Defendant Harvey Prawer executed the first promissory note ("First Note") in the amount of $1,000,000 to

---

1. Maine Savings Bank ("MSB") originally brought its Complaint before the Superior Court in and for the County of Cumberland and State of Maine on August 30, 1990. The Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver of MSB upon the Maine Superior Court's Issuance of an Order dated February 1, 1991, finding that MSB was insolvent. On the same date, the FDIC as Receiver of MSB, the FDIC as Corporation, and Fleet Bank, a Maine banking corporation, entered into a certain Purchase and Assumption Agreement whereby Fleet Bank purchased certain assets of MSB and assumed certain liabilities of MSB, but not the liabilities asserted by Defendants (and Counterclaim Plaintiffs) Prawer.

Fleet Bank, as assignee of the FDIC in its capacity as Receiver for MSB, has succeeded to MSB's rights, interests, and claims with respect to the loans and collateral at issue in this case. On March 8, 1991, Fleet Bank was substituted for MSB as Plaintiff and the FDIC was substituted for MSB as Counterclaim Defendant.

The FDIC removed this case to this Court on February 28, 1991, pursuant to 12 U.S.C. section 1819(b) and 28 U.S.C. section 1441.

Maine Savings Bank ("MSB") in his capacity as President of Limehouse Corporation ("Limehouse"). Both Harvey Prawer and co-Defendant Gilbert Prawer ("Defendants Prawer") signed a guaranty of the First Note as individuals. Defendants as comakers executed the second promissory note ("Second Note") in the amount of $200,000 to MSB.[2] Defendants defaulted on their obligations to MSB under these Notes.

Defendants Prawer raised several affirmative defenses to Plaintiff's claims and also counterclaimed against Plaintiff in three separate counts,[3] based on two loan commitment letters ("Commitment Letters" or "Letters") issued to Defendants by MSB.

The Court now has before it Plaintiff Fleet Bank's and Counterclaim Defendant FDIC's Motions for Summary Judgment, filed on September 26, 1991 and February 26, 1992, respectively. The Court acts on these motions on the basis of the written submissions of the parties.[4]

## I. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litiga-

tion, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson*, 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.*, 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be entered.

> *Anderson*, 477 U.S. at 249–59, 106 S.Ct. at 2510–11.

*Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989).

The Court now looks to the supporting papers on the motions and the citations to materials of evidentiary quality in support of the issues which the Court must consider as a basis for its action upon the motions.

## II. *Facts*

The Court finds the following facts to be undisputed on the record made on the motions.

---

**2.** Harvey Prawer signed the Second Note both individually and as President of Limehouse. Gilbert Prawer signed it individually.

**3.** Defendants' affirmative defenses and counterclaim are based upon identical allegations.

**4.** The Court, in its discretion under Rule 19(f) of the Rules of the United States District Court for the District of Maine, denies Defendants' counsel's request dated October 10, 1991 for oral argument on Plaintiff's Motion for Summary Judgment.

During 1987, Defendants Prawer, through their representatives on behalf of Limehouse, of which Harvey Prawer was President, began negotiations with MSB for the financing of "Coulthard Farms," a planned community in Scarborough, Maine. During the time of the negotiations with MSB, the estimated costs of the project totalled $2,500,000, consisting of $1,000,000 for the purchase of the property and $1,500,000 for the construction of the infrastructure consisting of roads, sewers, water supply, and other necessary structures.

On October 1, 1987, MSB issued a First Mortgage commitment letter ("First Commitment Letter") on the planned project in the amount of $1,000,000 for a term of 36 months, and on demand thereafter, for the purpose of purchasing the Coulthard Farms property. The First Commitment Letter noted that "[t]his loan shall be repaid from the sale of the mortgaged property or its refinancing into a residential subdivision development loan." Affidavit of Gilbert Prawer ("Gilbert Prawer Affidavit"), Exhibit A, ¶ 7.

On October 15, 1987, Harvey Prawer, as President of Limehouse, executed the First Note in the amount of $1,000,000, on behalf of Limehouse in favor of MSB. Both Harvey and Gilbert Prawer, each acting in his individual capacity, executed an unconditional guaranty of the First Note. On the same date, MSB and Limehouse entered into a Mortgage and Security Agreement whereby the property to be purchased by Limehouse for the Coulthard Farms project was mortgaged to the Bank. As part of the First Mortgage, MSB agreed that upon request, but at its option, it would make further advances to Limehouse up to a maximum of $2,500,000.

On September 7, 1988, MSB issued a Letter of Intent to the Maine Department of Environmental Protection, stating that it intended to finance the development of the "Coulthard Farms" project.

On December 21, 1988, MSB issued a second "First Mortgage Commitment" letter ("Second Commitment Letter") regarding Coulthard Farms, agreeing to provide an additional $200,000 for a term of "12 months with interest only to be repaid from the refinancing of the debt into a residential subdivision development loan." Gilbert Prawer Affidavit, Exhibit B, ¶ 3.

On April 12, 1989, Harvey Prawer, individually and as President of Limehouse, executed the Second Note in the initial amount of $200,000 in favor of MSB. Defendants Harvey and Gilbert Prawer, each acting in his individual capacity, executed the Second Note as comakers. $100,000 was drawn on the Second Note.

██ The Court has carefully reviewed the facial content of the First and Second Notes. The determination of whether there is any ambiguity in their terms on the issue of whether they are fully integrated documents is a question of law under Maine law. *See Portland Valve, Inc. v. Rockwood Systems Corp.*, 460 A.2d 1383, 1387 (Me.1983). The Court is satisfied that as a matter of law there is no ambiguity in either the First or Second Notes on this point and finds as a matter of law that each is a fully integrated document.

Limehouse has defaulted on its obligations to MSB and Fleet Bank by failing to pay sums when due under the First and Second Notes. *See* Affidavit of Fleet Bank of Maine, ¶¶ 6–7, 12–13. As a result, on August 30, 1990, MSB filed an action against Defendants Prawer on their Guarantees, as executed on behalf of Limehouse, pertaining to these Notes. On September 26, 1990, Defendants Prawer filed their Answer, Affirmative Defenses to MSB's Complaint, and Counterclaim. On September 26, 1991, Plaintiff Fleet Bank filed its Motion for Summary Judgment. On February 26, 1992, Counterclaim Defendant FDIC filed its Motion for Summary Judgment. For the reasons that follow, the Court will grant both Plaintiff's and Counterclaim Defendant's Motions for Summary Judgment.

### III. *Discussion*

#### A.

██ The *D'Oench, Duhme* doctrine, a federal common law estoppel doctrine, prohibits borrowers or guarantors from using secret or unrecorded side agreements to defend against efforts by the FDIC or its

assignees to collect on promissory notes that it has acquired from a failed bank. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942). This Court has invoked the doctrine in granting summary judgment in favor of the FDIC or its assignees to prohibit makers or guarantors of facially unqualified notes from using side agreements to defend against efforts by the FDIC or its assignees to collect on such notes. *See, e.g., Fleet Bank of Maine v. Steeves*, 785 F.Supp. 209, 215–16 (D.Me.1992) (Carter, C.J.); *Fleet Bank of Maine v. Wilson*, 780 F.Supp. 841, 846 (D.Me.1991) (Carter, C.J.); *New Maine National Bank v. Benner*, 774 F.Supp. 36, 39 (D.Me.1991) (Carter, C.J.); *Bateman v. FDIC*, 766 F.Supp. 1194, 1199 (D.Me.1991) (Carter, C.J.); *New Maine National Bank v. Seydler*, 765 F.Supp. 770, 773–74 (D.Me.1991) (Carter, C.J.).

This Court has held that the *D'Oench, Duhme* doctrine applies to third-party assignees of the FDIC, including Fleet Bank. *See Steeves*, at 214; *Wilson*, 780 F.Supp. at 846. *See also Federal Savings and Loan Insurance Corp. v. Griffin*, 935 F.2d 691, 698 (5th Cir.1991); *FDIC v. Newhart*, 892 F.2d 47, 50 (8th Cir.1989); *Adams v. Walker*, 767 F.Supp. 1099, 1106 (D.Kan.1991); *Adams v. Madison Realty & Development, Inc.*, 746 F.Supp. 419, 430 (D.N.J. 1990). Similarly, the Court has applied the common law doctrine's codification in 12 U.S.C. section 1823(e) to third-party assignees of the FDIC. *See Steeves*, at 214–216; *Wilson*, 780 F.Supp. at 845. *See also Madison Realty & Development*, 746 F.Supp. at 430; *Deposit Guaranty Bank v. Hall*, 741 F.Supp. 1287, 1290 (S.D.Tex.1990).[5]

### B.

■ Here, the basis of Defendants Prawers' affirmative defenses arises from the two Commitment Letters issued by MSB that conditioned repayment of the Notes upon MSB's refinancing of the debt. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment at 3. Defendants assert that the *D'Oench, Duhme* doctrine does not apply to the facts of this case because first, these two Commitment Letters are integral to the First and Second Notes and are not "secret or unrecorded side agreements;" and second, Fleet Bank, as a third-party assignee, is not entitled to rely on the *D'Oench, Duhme* doctrine or its statutory codification under 12 U.S.C. section 1823(e). *See id.* at 6–12.

The Court disagrees with both contentions and finds that the *D'Oench, Duhme* doctrine and 12 U.S.C. section 1823(e) are applicable to the facts of this case. With respect to Fleet Bank as a third-party assignee, this Court, as well as other courts, has held, as noted above, that third-party assignees may invoke the protection of the doctrine and of 12 U.S.C. section 1823(e).

■ With respect to the two Commitment Letters, the Court finds that even though the Commitment Letters were executed by MSB, they were neither referenced nor incorporated into the First and Second Notes that are the subject of Plaintiff's Complaint. *See* Gilbert Prawer Affidavit, Exhibits C & D. Any agreement that the "demand" provisions of the Notes would not be enforced as written was not contained in the Notes. On this basis, the Commitment Letters are inconsistent with the terms of the Notes, which the Court finds as a matter of law to be fully integrated documents.[6] *See Portland Valve*, 460 A.2d at 1387. The Notes constitute complete contractual commitments superseding in time any inconsistent terms of

---

**5.** Agreements must meet all four requirements set forth under 12 U.S.C. section 1823(e) to preclude its application. *See, e.g., FDIC v. Rivera–Arroyo*, 907 F.2d 1233, 1236 (1st Cir.1990); *FDIC v. P.L.M. International, Inc.*, 834 F.2d 248, 253 (1st Cir.1987).

**6.** As part of their argument that the Commitment Letters are an integral part of the two Notes, Defendants refer to the Mortgage and Security Agreement dated October 15, 1987, which states in pertinent part:

Upon request of [Defendants], [Plaintiff] may, at its sole option, from time to time make further advances to [Defendants], provided, however, that the total principal secured hereby and remaining unpaid, including any such advances shall not at any time exceed the sum of TWO MILLION FIVE HUNDRED THOUSAND DOLLARS ($2,500,000.00). Gilbert Prawer Affidavit, Exhibit E, ¶ 8. Notwithstanding Defendants' argument to the contrary, this language of the Mortgage Agree-

the Commitment Letters. Accordingly, the *D'Oench, Duhme* doctrine precludes, as a protection for the efforts of Fleet Bank as an assignee of the FDIC to collect on the First and Second Notes, Defendants' affirmative defenses, based on the existence of such Letters.[7]

Thus, the Court finds no merit in either of Defendants' assertions regarding the effect of the two Commitment Letters on the Notes and Fleet Bank's status as a third-party assignee. Accordingly, the Court will grant Plaintiff's Motion for Summary Judgment against Defendants on Plaintiff's Complaint, based on the invocation of the *D'Oench, Duhme* doctrine and its statutory codification under 12 U.S.C. section 1823(e).[8]

### C.

■ Defendants Prawers' counterclaim arises from the same set of predicate facts as their affirmative defenses to Plaintiff's Complaint.[9] The Court, therefore, similarly finds that the *D'Oench, Duhme* doctrine and 12 U.S.C. section 1823(e) bar their Counterclaim.[10] That is, the two Commitment Letters that form the basis for the Counterclaim represent collateral side agreements to what the Court has found as a matter of law, *see Portland Valve*, 460 A.2d at 1387, to be facially unqualified notes, which supersede in effect these prior collateral side agreements. *Cf. FDIC v. Laguarta*, 939 F.2d 1231, 1239 (5th Cir. 1991) ("[T]he Renewal Note itself expressly refers to 'the Loan Agreement and any amendment thereto.' "). Therefore, the Court will grant summary judgment in favor of the FDIC as Counterclaim Defendant on the basis of the common law *D'Oench, Duhme* doctrine.[11]

### IV. *Conclusion*

Accordingly, it is *ORDERED* that Plaintiff's Motion for Summary Judgment on its

---

ment does not alter in any way the Court's conclusion that the Commitment Letters are merely collateral side agreements and that, as a matter of law, the Notes are fully integrated documents.

7. The invocation of the common law *D'Oench, Duhme* doctrine is sufficient grounds for the Court to grant Plaintiff's Motion for Summary Judgment. In addition, however, under 12 U.S.C. section 1823(e), the Commitment Letters fail to meet all four statutory requirements. The record shows that, although these Letters were executed by MSB, they were not executed contemporaneously with the Notes. The First Commitment Letter was executed on October 1, 1987 and the First Promissory Note was executed on October 15, 1987. The Second Commitment Letter was executed on December 21, 1988 and the Second Promissory Note was executed on April 12, 1989. Therefore, these Letters violate section 1823(e)(2).

In addition, the record contains no evidence that the Commitment Letters were approved by MSB's board of directors or its loan committee under section 1823(e)(3). Defendants have not provided any record of the minutes of MSB's board or loan committee in this regard.

8. Plaintiff also raised the holder-in-due-course doctrine, which the Court will not reach because it has resolved the motion on the basis of the *D'Oench, Duhme* doctrine.

9. The Court of Appeals for the First Circuit has noted that "to distinguish between affirmative claims and defenses for purposes of applying the *D'Oench* doctrine would reduce the protec-

tion offered by the doctrine to a nullity." *Timberland Design, Inc. v. First Service Bank for Savings*, 932 F.2d 46, 49 (1st Cir.1991). The *Timberland* court further noted:

> To allow a claim *against* the FDIC asserting the very grounds that could not be used as a defense to a claim *by* the FDIC is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost.

*Id.* (quoting *Hall v. FDIC*, 920 F.2d 334, 340 (6th Cir.1990)) (quoting *Beighley v. FDIC*, 676 F.Supp. 130, 132 (N.D.Tex.1987), *aff'd*, 868 F.2d 776 (5th Cir.1989)).

10. The Court need not address the application of the holder-in-due-course doctrine to Plaintiff's Complaint and Defendants' Counterclaim because it has resolved the case on the basis of the *D'Oench, Duhme* doctrine.

11. Moreover, under section 1823(e)(2), these Commitment Letters were not executed contemporaneously with the Notes and, hence, they fail to meet all the requirements under section 1823(e).

Defendants argue that actual knowledge by FDIC of both the Commitment Letters and the MSB's claim against Defendants and Defendants' claim against MSB prior to acquisition of the assets of MSB precludes the application of the *D'Oench, Duhme* doctrine and 12 U.S.C. section 1823(e) to its Counterclaim. *See* Counterplaintiffs Harvey E. Prawer and Gilbert Praw-

Complaint be, and it is hereby, *GRANTED.* It is *FURTHER ORDERED* that FDIC's Motion for Summary Judgment on Defendants Prawers' Counterclaim be, and it is hereby, *GRANTED.*

It is *FURTHER ORDERED* that judgment shall enter against Defendants Harvey and Gilbert Prawer for the amounts due under the First and Second Notes. Plaintiff's counsel shall submit, on or before April 13, 1992, a proposed order entering final judgment in accordance with the foregoing order for the amount of principal, interest charges, and attorneys' fees due on the Notes.

Counsel shall confer forthwith and attempt to agree upon collection costs, including *reasonable* attorney's fees and shall file, on or before April 13, 1992, written submissions on the issues generated in respect to assessment of reasonable attorney's fees or an agreed upon resolution of such issues. In the absence of agreement, the Court will resolve any such issues upon the written submissions.

So ORDERED.

er's Memorandum of Law in Opposition to Counterdefendant FDIC's Motion for Summary Judgement at 5. Whether or not the FDIC had actual or constructive knowledge in this regard is immaterial to the application of 12 U.S.C. section 1823(e). *See Langley v. FDIC,* 484 U.S. 86, 94, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987) (an agreement is subject to 12 U.S.C. section 1823(e) even if the FDIC knew of the agreement at the time of the takeover of the failed bank).

Although *Langley* was decided under section 1823(e), the Court finds no reason why it should reach a different result under *D'Oench, Duhme* than it would reach under section 1823(e). As the Court of Appeals for the First Circuit noted regarding the issue of the FDIC's actual knowledge, "several courts have noted that the FDIC's actual knowledge of the agreement at the time it acquires the note is irrelevant.... We reject Timberland's argument that *D'Oench* should not apply because the FDIC had actual knowledge of the agreement." *Timberland Design,* 932 F.2d at 50–51. *See also Laguarta,* 939 F.2d at 1238; *Bateman,* 766 F.Supp. at 1201.

Therefore, the Court rejects Defendants' argument that the doctrine and section 1823(e) should not apply because of the FDIC's knowledge of the Commitment Letters.