**MILL INVESTMENTS, INC., Plaintiff,**

v.

**BROOKS WOOLEN COMPANY, INC., Defendant,**

and

**International Woolen Co., Inc., and Mill Investments, Inc., Parties–in–Interest.**

**Civ. No. 91–249–P–C.**

United States District Court, D. Maine.

June 23, 1992.

Leland Chisholm, Kelly, Remmel & Zimmerman, Portland, Me., for Mill Investments.

Peter Murray, Murray, Plumb & Murray, Portland, Me., for Brooks Woolen.

Craig Smith, Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Portland, Me. and Alan D'Ambrosio, Schader, Harrison, Segal & Lewis, New York City, for Intern. Woolen.

### MEMORANDUM AND ORDER GRANTING MOTION TO REMAND

GENE CARTER, Chief Judge.

This action for foreclosure arises from a loan made by Maine National Bank to Defendant Brooks Woolen Company. In January, 1991, the Federal Deposit Insurance Corporation (FDIC) was appointed receiver of Maine National Bank. The FDIC assigned the loan to a bridge bank, New Maine National Bank, which commenced this suit in Maine Superior Court on March 19, 1991. In July, 1991, New Maine National Bank was dissolved, and the FDIC was appointed its receiver. The FDIC, pursuant to 12 U.S.C. § 1819(b)(2)(A), removed the action to this Court on August 12, 1991.

On December 16, 1991, this Court granted Mill Investment's motion to be substituted for New Maine National Bank as Plaintiff and for New Bank of New England as Party–in–Interest in the case. Mill Investments' motion represented that New Maine National Bank and New Bank of New England had assigned to Mill Investments "all of [their] right title and interest in and to the [promissory note and mortgage] which

are the subject of this lawsuit."[1] The FDIC, therefore, is no longer in this suit either as receiver or as a party. International Woolen Co., Inc., (IWC) the other Party–in–Interest, has now moved to remand the action to state court.

In 1989 Congress, faced with a national banking crisis, enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) in order to facilitate takeovers of insolvent financial institutions and rehabilitation of the banking system. *Serge Marquis v. Federal Deposit Insurance Corp.*, 965 F.2d 1148 (1st Cir.1992). FIRREA provides for expanded federal jurisdiction over FDIC cases. *Capizzi v. Federal Deposit Insurance Corp.*, 937 F.2d 8, 11 (1st Cir.1991). Civil suits to which the FDIC is a party are "deemed to arise under the laws of the United States" and the FDIC "may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court" within 90 days of the FDIC's involvement in the suit. 12 U.S.C. § 1819(b)(2)(A) and (B).

The parties here agree that this case was properly removed by the FDIC. IWC argues, however, that remand is appropriate because the original reason for federal jurisdiction is now gone, the FDIC as receiver no longer remaining in this case either as Plaintiff or as a counterclaim Defendant. Mill Investments argues that as successor to the FDIC's interest, it is entitled to federal jurisdiction.

There are a number of ways of looking at the procedural situation created by the dismissal of the FDIC from a case which was eligible for removal from state court solely because of its presence as receiver for one of the parties. In *Estate of Rains v. Dinges*, 769 F.Supp. 353 (D.Kan. 1991), the FDIC, as receiver for a failed bank, had removed from state court under FIRREA an action in which Plaintiff had alleged under state law that the failed bank and others had fraudulently induced it to enter into promissory notes. After resolution of the claims by and against the FDIC concerning the notes, the court, *sua sponte*, remanded the case, finding that without the FDIC in the case, the basis for federal subject matter jurisdiction was lacking. *Id.* The Court based its remand on 28 U.S.C. § 1447(c)[2], which provides in pertinent part: "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."[3]

A different approach, and one apparently subscribed to by both parties here, is that the Court retains subject matter jurisdiction over the remaining nonfederal claims, even if the basis for federal subject matter jurisdiction is lost. *See, IMFC Professional Services, Inc. v. Latin American Home Health, Inc.*, 676 F.2d 152, (5th Cir.1982); *District of Columbia v. Merit Systems Protection Bd.*, 762 F.2d 129, 132 (D.C.Cir. 1985).[4] The concepts of ancillary and pen-

---

**1.** Although Mill Investments acquired the right to the claims here presented, it did not seek to be substituted for New Maine National Bank or New Bank of New England in their capacities as counterclaim and cross-claim defendants. By order dated December 16, 1991, the Court dismissed the claims against New Bank of New England and International Woolen Company's counterclaim against New Maine National Bank. Those parties, therefore, are no longer in the case.

**2.** The Court of Appeals for the First Circuit has determined that "FDIC removals continue to be governed by the same general removal principles which govern any other removal." *Woburn Five Cents Savings Bank v. Robert M. Hicks, Inc.*, 930 F.2d 965, 968 (1st Cir.1991) (holding that notice of removal by the FDIC must be filed within 30 day time limit set forth in 28 U.S.C.

§ 1446(b)). Although *Woburn* specifically dealt with the applicability of section 1446(b) to removals by the FDIC, its language and reasoning make plain that 28 U.S.C. § 1447, the general remand statute, would also apply except to the extent that it is modified by FIRREA. *See id.*

**3.** Remand was also ordered under section 1447(c) by the court in *FirstSouth, F.A. v. Lasalle National Bank,* 1991 WL 188649 (N.D.Ill.1991), after the FDIC, which as receiver had removed the case, sold the mortgage upon which foreclosure was sought, leaving a state law based claim and no other basis of federal jurisdiction.

**4.** In *IMFC Professional Services v. Latin American Home Health, Inc.,* 676 F.2d 152 (5th Cir. 1982) the Court held that elimination of a federal officer whose presence was the basis for removal to federal court under 28 U.S.C.

dent party jurisdiction addressed in *IMFC* and *Merit Systems Protection* have now been codified as supplemental jurisdiction in a federal statute. 28 U.S.C. § 1367. IWC urges the Court to consider the claims now pursued by Mill Investments under this statute.[5] While application of the concept of supplemental jurisdiction here is somewhat strained since there are not two discrete groups of claims, the Court is satisfied that the intent of the statute is broad enough to encompass the type of claims remaining here. The claims of Mill Investments clearly form part of the same case over which the Court had original jurisdiction because they are the original claims with Mill Investments substituted as the Plaintiff.

■ Although the Court has jurisdiction over Mill Investments' claims, it has the discretion under section 1367(c), as it had before the enactment of the statute, *see Merit Systems Protection*, 762 F.2d at 133; *IMFC*, 676 F.2d at 159, to remand the case to state court. Section 1367(c) permits district courts to decline to exercise supplemental jurisdiction if

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

These considerations reflect the values of "economy, convenience, fairness, and comity" which informed the decision whether to remand pendent claims prior to enactment of section 1367. *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 353, 108 S.Ct. 614, 620, 98 L.Ed.2d 720 (1988).

In this case, consideration of the factors set forth above leads the Court to conclude that this case should be remanded to state court. While the court has not dismissed the claims over which it has original jurisdiction, the effect of the substitution of Mill Investments for the failed bank is essentially the same. The basis for original jurisdiction no longer exists since the FDIC is no longer in the case as receiver. This being so, the Court finds compelling reasons why the case should be remanded.

In the state courts of Maine and the state court of New York, there are a number of actions including IWC and Brooks Woolen as parties which, in a general sense, appear to arise from the same factual matrix as the case here and which present some similar and related issues. Both convenience and judicial economy will be best served if the cases are all in state court where they can be dealt with on a consolidated basis if examination of them proves that such treatment would be efficient. *See Fair v. NCNB Texas National*

§ 1442, which has been analogized to the removal provision of FIRREA, *see e.g., Lazuka v. Federal Insurance Corp.,* 931 F.2d 1530 (11th Cir.1991), does not oust the district court of jurisdiction. In *IMFC* the federal party had intervened as Defendant to a third party complaint. When that complaint and other claims were dismissed, all that remained was a state law claim between nondiverse parties. The court stated that section 1442 had created a species of ancillary jurisdiction over the nonfederal elements of the case and stated that "the law is uniform that ancillary counterclaims may be considered after the main claim has been disposed of." *Id.* at 159.

Similarly, in *District of Columbia v. Merit Systems Protection,* 762 F.2d 129, 132 (D.C.Cir. 1985), a case in which a federal agency was the removing defendant under section 1442 and a non-federal individual intervened as defendant, the court held that "if the federal party is eliminated from the suit after removal under this provision, the district court does not lose its ancillary or pendent-party jurisdiction over the state law claims against the remaining non-federal parties."

5. Section 1367(a) provides:

a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

*Bank,* 733 F.Supp. 1099, 1106 (N.D.Tex. 1990).

██ Mill Investments argues that remand is inappropriate in this case because the state law issues to be resolved are simple and concern New York rather than Maine law. It further argues that the Maine state courts have a glut of cases and should not be the forum to decide on federal protections which Mill Investments, as assignee of the FDIC is entitled to assert in this action. The Court notes that it is not remanding because of the complexity of the state law to be applied. Although a federal defense might be presented, state law claims predominate here.

While the Court is cognizant of the somewhat slower docket in state court, savings of both time and money for all parties may be achieved if consolidation is possible in state court, even, for example, if just for pretrial practice. Moreover, even if consolidation is not possible, there may be familiarity by the state court with the totality of events surrounding this suit, which would make trial there more efficient and permit scheduling which would insure the efficacy of the process. The Court does not perceive its function as one of exercising its jurisdiction merely to ease the burden on the state courts. Rather, in determining whether to remand claims over which it has jurisdiction, the Court must weigh the considerations set forth by statute and the federal courts, and it has done so. The Court notes, too, that FIRREA was also enacted to promote "fairness to claimants, minimization of expense, and thoughtful husbanding of judicial resources." *Serge Marquis v. Federal Deposit Insurance Corp.,* 965 F.2d 1148 (1st Cir.1992). Remand in this case effectuates these goals.

Mill Investments relies on *Federal Savings & Loan Insurance Corp. v. Griffin,* 935 F.2d 691 (5th Cir.1991). In *Griffin* the Court of Appeals for the Fifth Circuit declined to remand a case removed to federal court by the Federal Savings and Loan Insurance Corp. as receiver for a failed bank which had sued defendant on a promissory note, even though neither FSLIC nor FDIC was still a party. The court in *Grif-*

*fin* rejected defendant's argument that the case should be remanded for lack of jurisdiction primarily on the grounds that removal of the case had been proper, an issue not really in dispute here. *Id.* at 696–697. The court stated: "The dismissal of one of the parties by the time of the appeal does not affect the propriety of removal." *Id.* at 696.

The *Griffin* court also explained that Congress had not intended for cases to be remanded when the FDIC was no longer a party. Without citation either to the legislative history or to other case law, the court stated:

> The policy reasons for insuring federal jurisdiction over cases involving the actions of failed thrifts continue when the FDIC is voluntarily dismissed as a party and the owner of the failed thrift's assets remains. A transferee from FSLIC or FDIC, as successor of their interests, is still entitled to the protection of federal courts applying *D'Oench, Duhme,* even when FSLIC or FDIC is voluntarily dismissed.

*Id.* This Court does not find the Fifth Circuit's reasoning persuasive.

As mentioned previously, FIRREA was enacted to deal with a banking crisis and "to smooth the modalities by which rehabilitation might be accomplished." *Serge Marquis v. Federal Deposit Insurance Corp.,* 965 F.2d at 1154. It is clear to the Court that this policy is not advanced in any significant way by retaining federal jurisdiction once the failed bank's assets have been assigned to a private company. The expanded federal jurisdiction and other procedural protections of FIRREA may "tremendously increase the FDIC's ability to carry out its regulatory and enforcement responsibilities under FIRREA." *Matter of Meyerland Co.,* 960 F.2d 512, 519 (5th Cir.1992). While the procedural protections also allow "the FDIC to effectively and aggressively protect a failed bank's interests and assets," *id.* at 519–20, it can no longer do so when it is no longer a party to the case and when those assets have successfully been assigned to another. In essence, one of the goals of the statute has

been achieved on a micro level once the assets have been assigned.

■ The court in *Griffin* suggested that transferees from the FDIC are entitled to protection by federal application of the *D'Oench, Duhme* doctrine. *Griffin*, 935 F.2d at 696; *see D'Oench, Duhme Co., Inc. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). *D'Oench, Duhme* is "a federal estoppel doctrine which prohibits borrowers or guarantors from using secret or unrecorded side agreements to defend against efforts by FDIC or its assignees to collect on promissory notes it has acquired from a failed bank." *Fleet Bank of Maine v. Prawer*, 789 F.Supp. 451, 454–55 (D.Me. 1992). This Court, as well as the Fifth Circuit Court of Appeals, has determined that the *D'Oench, Duhme* doctrine may be employed not only by the FDIC but also by assignees of the FDIC. *Id.* at 455; *Porras v. Petroplex Savings Assn*, 903 F.2d 379 (5th Cir.1990). The reason that the *D'Oench, Duhme* doctrine has been held available to assignees of the FDIC as well as to the FDIC itself is that if the protection did not run with the notes, "the market would be smaller, which would have a deleterious effect on FDIC's ability to protect the assets of failed banks." *Porras*, 903 F.2d at 381 (*quoting Federal Deposit Insurance Corp. v. Newhart*, 892 F.2d 47, 50 (8th Cir.1989)). It is plain, then, that making the doctrine available to assignees furthers the statutory goals of FIRREA. The Court cannot find, however, that for the doctrine to fulfill its policy goals it must be applied only by the federal courts or that Congress intended such a result.

There has long been a presumption within the federal system that state courts are as capable as federal courts of guaranteeing federal rights. *Bettencourt v. Board of Registration*, 904 F.2d 772, 776 (1st Cir.

1990). Not only are the state courts deemed competent, but as the Court of Appeals for the First Circuit has stated, "[c]omity counsel[s] respect for both state enforcement of state laws and the ability of state courts to give proper attention to federal law defenses." *Marcal Paper Mills, Inc. v. Ewing*, 790 F.2d 195, 196 (1st Cir.1986). There is no reason, therefore, that assignees of the assets of failed banks need *federal* application of the *D'Oench, Duhme* doctrine in order for them to reap its full protection.

While the language of FIRREA clearly evidences a "strong Congressional intent that the *FDIC* enjoy federal jurisdiction," *Villafane Neriz v. Federal Deposit Insurance Corp.*, 775 F.Supp. 490, 491, (D.P.R. 1991) (emphasis added), there is no equivalent indication that Congress intended every case that formerly included the FDIC to be adjudicated in federal court. Although Congress might have given removal power to assignees or transferees from the FDIC to assure federal court application of *D'Oench, Duhme*, it did not. *See* 12 U.S.C. § 1819(b); *see also, Woburn Five Cents Savings Bank*, 930 F.2d at 968 ("Congress in drafting FIRREA clearly knew how to provide for alternative removal procedures when it deemed them appropriate.") Moreover, when there exists a federal claim or defense, removal by the FDIC to federal court is discretionary rather than mandatory, indicating that Congress did not find a federal forum imperative to achieve its aims.[6]

The Court does not find that *Griffin* provides a satisfactory rationale for retaining jurisdiction over this case now that the FDIC is no longer a party. Mill Investments will be able to present its *D'Oench, Duhme* defense in state court, and remand

---

6. The Fifth Circuit has stated that "access to federal courts in all actions to which it is a party allows the FDIC to develop and rely on a national and uniform body of law." *Matter of Meyerland Co.*, 960 F.2d at 515. The statutory structure and the generally accepted principles of federal-state comity suggest to this Court that while Congress may have wanted to impose a "national and uniform body of law" with its

enactment of FIRREA, it was not as concerned with development of that body of law in the federal courts alone. Rather it appears that a stronger purpose in expanding federal court jurisdiction for the *FDIC* was to enhance regulatory enforcement powers, giving the FDIC the broadest opportunity possible to combat improper banking practices. *See Capizzi*, 937 F.2d at 10–11.

will neither prejudice Mill Investments nor disserve the policies of FIRREA.[7]

Accordingly, it is *ORDERED* that IWC's motion to remand be, and it is hereby, *GRANTED*. This case is hereby *RE-MANDED* to the state court from which it was removed.

SO ORDERED.

---

7. Recognizing that the non-federal defendant might raise the *D'Oench, Duhme* defense in state court, the court in *Fair* found both that this did not confer an independent basis for federal jurisdiction and that it did not present a significant federal interest. *Fair,* 733 F.Supp. at 1106.