**FLEET BANK OF MAINE, Plaintiff,**

v.

**Joan T. STEEVES and James L. Swartz, D.O., Defendants,**

and

**Pond Cove Millwork Co., et al., Parties–in–Interest,**

and

**Federal Deposit Insurance Corporation, Counterclaim Defendant.**

**Civ. No. 91–0076–P–C.**

United States District Court, D. Maine.

Feb. 12, 1992.

William Shumaker, Andrew Horton, Verrill & Dana, Alexandra Treadway, Portland, Me., for plaintiff.

Sidney Thaxter, John Gleason, Curtis, Thaxter, Stevens, Broder & Micoleau, William Leete, Beagle, Pearce, Feller & Ridge, Portland, Me., for parties-in-interest.

Anthony Perkins, Peter Rubin, Bernstein, Shur, Sawyer & Nelson, Portland, Me., for defendants.

Alexandra Treadway, Andrew Horton, Verrill & Dana, Portland, Me., for counterclaim defendant.

## ORDER GRANTING SUMMARY JUDGMENT OF PLAINTIFF FLEET BANK OF MAINE

GENE CARTER, Chief Judge.

This case involves the claims of Plaintiff Fleet Bank of Maine (hereinafter "Fleet Bank" or "Plaintiff") for foreclosure of two mortgages under Title 14 M.R.S.A. section 6321 *et seq.* and for collection of amounts due under a promissory note (hereinafter "Note") and an Equity Line of Credit agreement (hereinafter "Equity Line") that are in default. The Note and Equity Line were signed by Defendants Joan T. Steeves and James L. Swartz.[1] Fleet Bank, as the successor-in-interest to Maine Savings Bank (hereinafter "MSB")[2] is the present holder of the Note in the original principal amount of $350,000 and the Equity Line sought to be foreclosed in this action.

Plaintiff originally brought its Complaint before the Superior Court in and for the County of Cumberland and State of Maine on September 13, 1990. It was removed to this Court on March 1, 1991 pursuant to 12 U.S.C. section 1819(b) and 28 U.S.C. section 1441 *et seq.* This removal arose from the FDIC's appointment as Receiver MSB upon the Maine Superior Court's issuance of an Order dated February 1, 1991, finding that MSB was insolvent.[3]

Defendant Steeves raised an affirmative defense of setoff to MSB's claims, and counterclaimed against MSB in a single count, based on a construction loan agreement (hereinafter "Agreement") dated January 5, 1987.[4] Her defense and counterclaim are based on the alleged failure of MSB to withhold ten percent of the loan proceeds from the general contractor pending successful completion of the project.

The Court now has before it Plaintiff's and Counterclaim Defendant's Motion for Summary Judgment[5] on Count I ("Foreclosure of Real Estate Mortgage") and Count III ("Personal Action Against Joan T. Steeves as Co–Maker of the First Note and Equity Line") of its Complaint,[6] filed on December 19, 1991.[7] The Court acts on these motions on the basis of the written submissions of the parties.

### I. *Summary Judgment*

Pursuant to Federal Rule of Civil Procedure 56(c), a motion for summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

---

1. Defendant Swartz filed for protection under Chapter 7 of the United States Bankruptcy Code on December 17, 1990. Therefore, Fleet Bank is not seeking summary judgment against Defendant Swartz.

2. Fleet, as assignee of the Federal Deposit Insurance Corporation (hereinafter "FDIC") in its capacity as Receiver for MSB, has succeeded to MSB's rights, interests and claims with respect to the loans and collateral at issue in this case. On or about March 8, 1991, Fleet Bank was substituted for MSB as Plaintiff.

3. On February 1, 1991, the FDIC as Receiver of MSB, the FDIC, Fleet Bank, a Maine banking corporation, entered into a certain Purchase and Assumption Agreement whereby Fleet Bank purchased certain assets of MSB and assumed certain liabilities of MSB, but not the liabilities asserted by Defendant (and Counterclaim Plaintiff) Steeves.

4. On or about March 8, 1991, the FDIC was substituted for MSB as Counterclaim Defendant.

5. Plaintiff's Motion for Summary Judgment against Defendant Joan T. Steeves and the par-

ties-in-interest in this action was originally filed in the Superior Court for the State of Maine in Cumberland County on January 16, 1991.

6. Plaintiff's Motion for Summary Judgment does not include Count II ("Personal Action Against James L. Swartz, D.O. as Maker of a Commercial Note") or Count IV ("Personal Action Against James L. Swartz, D.O. as Co–Maker of the First Note and Equity Line") of its Complaint.

7. Parties-in-Interest, Bay Electric Company, Inc. and Equity Plumbing & Heating, Inc., filed a Motion for Summary Judgment on January 7, 1992. Pursuant to the Court's Scheduling Order in this case dated September 11, 1991, the deadline for the filing of all motions with supporting memoranda was December 20, 1991. The moving parties have not sought any extension of time and have made no showing of a basis on which one may be granted. Therefore, the Court will not accept the Parties-in-Interest's late filing of the motion.

matter of law." The Court of Appeals for the First Circuit has articulated the legal standard to be applied in deciding motions for summary judgment:

> [T]he movant must adumbrate 'an absence of evidence to support the nonmoving party's case.' *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 [106 S.Ct. 2548, 2554, 91 L.Ed.2d 265] (1986). When that is accomplished, the burden shifts to the opponent to establish the existence of a fact issue which is both 'material,' in that it might affect the outcome of the litigation, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904 [96 S.Ct. 1495, 47 L.Ed.2d 754] (1976), and 'genuine,' in that a reasonable jury could, on the basis of the proffered proof, return a verdict for the opponent. *Anderson,* 477 U.S. at 248 [106 S.Ct. at 2510]; *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988). It is settled that the nonmovant may not rest upon mere allegations, but must adduce specific, provable facts demonstrating that there is a triable issue. 'The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial.' *Mack v. Great Atlantic and Pacific Tea Co.,* 871 F.2d 179, 181 (1st Cir.1989). As the Supreme Court has said:

> > [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be entered.

> *Anderson,* 477 U.S. at 249–59 [106 S.Ct. at 2510–16].

*Brennan v. Hendrigan,* 888 F.2d 189, 191–92 (1st Cir.1989).

The Court now looks to the supporting papers on the motion and the citations to materials of evidentiary quality in support of the issues which the Court must consider as a basis for its action upon the motion.

## II. *Facts*

In October, 1987, MSB made a loan to Defendants evidenced by a promissory note in the amount of $350,000 (hereinafter "First Note"). As security for the First Note, Defendants executed a mortgage in favor of MSB (hereinafter "First Mortgage"). In February, 1989, MSB extended a second loan to Defendants under an Equity Line in a maximum amount of $25,000. As security for the Equity Line, Defendants executed a second mortgage in favor of MSB (hereinafter "Second Mortgage"), reconveying the mortgaged premises under the First Mortgage.[8]

On or about February 23, 1990, MSB notified Defendants in writing that the First Note and Equity Line were in default and demanded that the defaults be cured within thirty days. Later, on or about September 4, 1990, MSB, through its attorney, again notified Defendants in writing of the defaults and breach of conditions and demanded payment in full of all sums due under the First Note and Equity Line. Defendants are currently in default on the First Note and Equity Line, the last payment having been made in July of 1989 on the First Note and in April of 1989 on the Equity Line.

Parties-in-Interest Pond Cove Millwork Co., Bay Electric Company, and Equity Plumbing and Heating filed mechanic's-lien actions on the construction site property, naming MSB as a party-in-interest. These actions were consolidated in the Maine Superior Court, and the liens were declared invalid in an opinion issued by the Maine Supreme Judicial Court on October 30, 1991. *See Pond Cove Millwork Co., et al. v. Steeves, et al.,* 598 A.2d 1181 (Me.1991).

Defendant Steeves' counterclaim is based on a construction loan agreement between Steeves and Fleet Bank, dated January 5,

---

**8.** On or about March 14, 1989, Defendant Swartz conveyed his interest in the mortgaged premises to Defendant Steeves by deed.

1987. The Agreement was made pursuant to a promissory note for $332,000 given to Fleet Bank and signed by Steeves on that date. Paragraph 1, on pages 2 and 3, of the Agreement states that Fleet Bank agreed to disburse ninety percent of the construction costs approved by the Bank, but that ten percent would be withheld pending final completion of the project. The Agreement also states that "[t]he Mortgagee (Fleet Bank), at its discretion, may waive said 10% retainage upon any periodic inspection."[9]

This Agreement was neither referenced nor incorporated in the Note and Equity Line at issue in Plaintiff's Complaint. No written agreement exists between Defendant Steeves and MSB which was executed contemporaneously with the Note and Equity Line stating that these loans could not be enforced if the Agreement were breached. Similarly, there is no official record of MSB with respect to the January 5, 1987 Agreement which would incorporate the terms of this Agreement in the Note or Equity Line.

As early as February 1987, Defendant Steeves began to have problems with the construction being performed by IBIS Construction Company (hereinafter "IBIS"). During that month, an MSB inspector came to Defendant's house under construction, and he and Defendant walked around the construction site. During that visit, Defendant told him about some of the problems that they were having on the job. The inspector also pointed out some things that he questioned, including delays in the work. He stated to Defendant that he "should have been out here before this." MSB, however, failed to retain ten percent of each advance after receiving notice that

IBIS was not meeting its obligations under its construction contract.

By the spring of 1987, substantial problems were occurring with the property's construction. Defendant Steeves told her loan officer at MSB that she was having problems on the job, and the officer told her that she was not the only one having trouble with IBIS. These problems led to the contractor stopping work in June or July 1987 and the parties negotiating an amendment to the construction contract in order for construction to proceed.

### III. *Discussion*

#### A.

Pursuant to Maine law, the Court shall determine (1) whether there has been a breach of condition of the mortgage; (2) the amount due thereon, including reasonable attorney's fees and court costs; and (3) the order of priority and the amount due, if any, to other parties that may appear. 14 M.R.S.A. § 6322 (Supp.1990). The Court concludes that no genuine issue of material fact exists as to any of these elements under Maine law.

Here, first, the First and Second Mortgages were given to secure the First Note and the Equity Line, respectively. Defendant does not deny that she has failed to pay the amounts due under the Note and Equity Line. In this regard, no genuine issue of material fact exists as to whether Defendant is in default under the Note. As a result, Defendant is in breach of conditions of the mortgages.

Second, Defendant Steeves has failed to make the required payments of the principal and accrued interest due under the Note and Equity Line. Defendant owed Plaintiff $346,028.83 in unpaid principal on the First Note, along with other (non-attor-

---

**9.** The $332,000 Note states:
This promissory note is secured by Mortgage and Security Agreement of even date on real and personal property situated at and near Lot 4, Coveside Subdivision in the Town of Cumberland, County of Cumberland and State of Maine. Disbursement of the proceeds of this promissory note is to be made in accordance with the terms and conditions of a Construction Loan Agreement of even date, any of which terms and conditions the under-

signed hereby agree may be waived by the holder (the Bank) hereof in its sole discretion. Based on this term in the Note, which was signed and agreed to by Defendant Steeves, Fleet Bank concludes that it had the right to waive any retainage of the proceeds of this Note. *See* Plaintiff's Motion for Summary Judgment Against Defendant Joan T. Steeves (with Memorandum) (hereinafter "Plaintiff's Motion"), ¶ 16, at 4.

ney) fees totalling $14,091.35.[10] In addition, Defendant owed Plaintiff $96,117.45 accrued interest as of December 11, 1991, and interest accruing thereafter at the *per diem* rate of $102.00. Under the terms of the Equity Line and Second Mortgage, Defendant owed Plaintiff $25,000 in unpaid principal, along with $7,819.97 accrued interest as of December 11, 1991, and interest accruing thereafter at the *per diem* rate of $7.36. In addition, Defendant owes Plaintiff a discharge fee of $6.00.

Lastly, with respect to the order of priority, and the amount due to other parties, Parties-in-Interest Pond Cove Millwork Co., Bay Electric Company, and Equity Plumbing and Heating filed mechanic's-lien actions on the construction site property, naming MSB as a party-in-interest, but these lien claims were declared invalid in the Law Court opinion of *Pond Cove Millwork Co., et al. v. Steeves, et al.*, 598 A.2d 1181 (Me.1991). Thus, these Parties-in-Interest do not have priority over Plaintiff on the proceeds from any public foreclosure sale of the property in question.

The Court finds that Plaintiff has satisfied the aforementioned elements under Maine law and has established its affirmative case. Defendant raises setoff as an affirmative defense. For the reasons that follow, the Court finds that this defense is barred as a matter of law under the *D'Oench, Duhme* doctrine and its codification under Title 12 U.S.C. section 1823(e).

**B.**

■ The *D'Oench, Duhme* doctrine, a federal common law estoppel doctrine, prohibits defendants from using secret or unrecorded side agreements to defend against efforts by the FDIC or its assigns to collect on notes that it has acquired from a failed bank. *See D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942). Its purpose is to protect the FDIC from "misrepresentations and secret agreements which might result in it incorrectly assessing the value of bank holdings for institutions which it insures, makes loans, or acquires in its corporate capacity." *Federal Deposit Insurance Corp. v. P.L.M. International, Inc.*, 834 F.2d 248, 252 (1st Cir.1987). The *D'Oench, Duhme* doctrine does not require a showing that the defendant had the intent to defraud. *Id.* at 252–53. The only element of fault necessary to the invocation of the doctrine is the borrower's failure to reduce the agreement to writing. *See Timberland Design, Inc. v. First Service Bank for Savings*, 932 F.2d 46, 49 (1st Cir.1991).

■ Courts have expanded the application of this doctrine. First, it is not limited to the FDIC in its corporate capacity as the insurer of a failed institution's deposits. The FDIC may also assert the doctrine in its capacity as the receiver of the failed institution. *Id.* Second, bridge banks may assert the doctrine as the assignees of the FDIC as the receiver of the failed institution. *See, e.g., Kilpatrick v. Riddle*, 907 F.2d 1523, 1528 (5th Cir.1990) ("[I]f the *D'Oench Duhme* doctrine protects the FDIC, it also protects [bridge bank], because 'we recently extended *D'Oench Duhme* to *assignees* of the FDIC.' "), *cert. denied*, —— U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991); *New Maine National Bank v. Benner*, 774 F.Supp. 36, 39 (D.Me. 1991) (Carter, C.J.) ("The Court has recently held that a borrower defending against an effort by a bridge bank to collect on a note is estopped from asserting all defenses to the bridge bank's claims which rely for their success upon oral agreements or representations."); *Bateman v. Federal Deposit Insurance Corp.*, 766 F.Supp. 1194, 1199 (D.Me.1991) (Carter, C.J.) ("[B]ridge banks may assert the doctrine as the assignees of the FDIC as the receiver of a failed institution"); *New Maine National Bank v. Seydler*, 765 F.Supp. 770, 773–74 (D.Me.1991) (Carter, C.J.) (same). Lastly, courts have expanded

---

**10.** This figure is based upon $4,577.46 in unpaid late charges; $8,849.49 in real estate taxes paid; $483.40 in hazard insurance paid; $175.00 in an appraisal fee; and $6.00 in a discharge fee. It does not include the disputed attorneys' fees through November 30, 1991 in the amount of $16,921.01. *See* Affidavit of Fleet Bank, paragraph 12.

the doctrine to apply to other non-bridge-bank assignees of the FDIC, including private parties. *See, e.g., Federal Savings and Loan Insurance Corp. v. Griffin,* 935 F.2d 691, 698 (5th Cir.1991) (*"D'Oench Duhme* can be applied for the benefit of an assignee or a transferee/purchaser from FDIC...."); *Federal Deposit Insurance Corp. v. Newhart,* 892 F.2d 47, 50 (8th Cir.1989) ("FDIC transfers its protected status to subsequent purchasers of notes it holds");[11] *Fleet Bank of Maine v. Wilson,* 780 F.Supp. 841 (D.Me.1991) (Carter, C.J.) ("[B]oth the common law *D'Oench Duhme* doctrine and its codified statutory provisions estop Defendant from asserting the only defenses that she has raised against [Fleet Bank]'s Complaint."); *Adams v. Walker,* 767 F.Supp. 1099, 1106 (D.Kan. 1991) ("[C]urrent trend is for the *D'Oench* doctrine to protect those third-party institutions that have been transferred assets from a federal receiver"); *Adams v. Madison Realty & Development, Inc.,* 746 F.Supp. 419, 430 (D.N.J.1990) ("Courts faced with the question of protection for 'new banks' or for private purchasers of securities from FDIC ... have uniformly provided protection identical to that afforded the FDIC ... under § 1823(e) and *D'Oench, Duhme.*"); *Maine Savings Bank v. D'Ambra Corp.,* Nos. CV–89–296 and CV–89–83 (Me.Super.Ct.Cumb.Cty. Aug. 28, 1991) (Fleet Bank, as assignee of the FDIC following failure of Maine Savings Bank, is entitled to benefits of *D'Oench Duhme* doctrine). The *D'Oench, Duhme* doctrine is no longer strictly common law. Section 2[13](e) of the Federal Deposit Insurance Act of 1950 and section 214(a) of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") both incorporated and clarified the doctrine. *See* 12 U.S.C. §§ 1823(e), 1821(n)(4)(I). Under 12 U.S.C. section 1823(e):

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section, or Section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement
>
> 1) is in writing;
>
> 2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution;
>
> 3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee; and
>
> 4) has been, continuously, from the time of its execution, an official record of the depository institution.[12]

Agreements not meeting all four requirements set forth under the statute are unenforceable against the FDIC. *See, e.g., Federal Deposit Insurance Corp. v. Rivera-Arroyo,* 907 F.2d 1233, 1236 (1st Cir.1990) ("[W]ritten agreements offered as evidence by [defendants] were not executed by the closed Giord Trust Company, not approved by its Board of Directors and were not part of the Trust Company's records."); *P.L.M.*

---

11. The *Newhart* court extended federal holder-in-due-course status to a private party that purchased notes from the FDIC in its corporate capacity. *Id.* Later, the Fifth Circuit noted in *Porras v. Petroplex Savings Association:*

> The federal holder in due course doctrine and the *D'Oench Duhme* doctrine are interrelated and courts' discussions of the two ideas reflect this close relationship. Although there are differences between the two concepts, both enhance the FSLIC's ability to protect the assets of failed institutions and the reasoning used by the courts in discussing one of the concepts generally applies to the other.

903 F.2d 379, 381 n. 5 (5th Cir.1990).

12. The Supreme Court gave a very broad definition to the "agreements" that must meet the four requirements of this statutory estoppel doctrine:

> Certainly, one who signs a facially unqualified note subject to an unwritten and unrecorded condition upon its repayment has lent himself to a scheme or arrangement that is likely to mislead banking authorities, whether the condition consists of performance of a counterpromise (as in *D'Oench, Duhme*) or of the truthfulness of warranted fact.

*Langley v. Federal Deposit Insurance Corp.,* 484 U.S. 86, 92–93, 108 S.Ct. 396, 402, 98 L.Ed.2d 340 (1987).

*International,* 834 F.2d at 253 ("The document was not executed contemporaneously with the letter of guaranty; the minutes of the meeting or the board of directors and the credit committee did not refer to or discuss the release; and the release was never included in the official files of Girod."). *See also Federal Deposit Insurance Corp. v. Caledonia Investment Corp.,* 862 F.2d 378, 383 (1st Cir.1988). Courts have interpreted section 1823(e) as precluding defenses of obligors on obligations that were previously assigned to the insolvent bank and subsequently assumed by the FDIC or its assignees. *See, e.g., Wilson,* 780 F.Supp. 841 ("[The doctrine's] codified statutory provisions estop Defendant from asserting ... defenses"); *Adams,* 746 F.Supp. at 430 (courts have universally applied 12 U.S.C. section 1823(e) to cases involving private purchasers of securities from FDIC); *Deposit Guaranty Bank v. Hall,* 741 F.Supp. 1287, 1290 (S.D.Tex.1990) (Protection of 12 U.S.C. section 1823(e) applies to bank that purchases assets from FDIC).

The Court finds that the *D'Oench, Duhme* doctrine and its codification under Title 12 U.S.C. section 1823(e) preclude Defendant from raising her affirmative defense of set-off under the Agreement. First, courts, including this Court, have applied the doctrine to assignees of the FDIC, including bridge banks and private parties, such as Fleet Bank. Fleet Bank may properly avail itself of the *D'Oench, Duhme* doctrine to protect itself against unwritten agreements that would serve to prevent its efforts to collect on assets that it has acquired from a failed bank. Second, the record does not show that the Agreement was either referenced or incorporated in the First Note or Equity Line. Similarly, there is no official record of MSB regarding the Agreement that would incorporate the terms of that Agreement in the Note or Equity Line. As this Court noted about the *Langley* case:

The *Langley* Court, building on its earlier work in *D'Oench* to interpret 12 U.S.C. § 1823(e), made clear that *any unwritten and unrecorded condition* upon the repayment of a note is a 'scheme or arrangement that is likely to mislead banking authorities' and, therefore, is unavailable as a defense to a facially unqualified note.

*Benner,* 774 F.Supp. at 40 (quoting *Langley,* 484 U.S. at 93, 108 S.Ct. at 402). Lastly, the record does not show that any written agreement between Defendant and MSB was executed contemporaneously with the Note and Equity Line stating that these loans could not be enforced if a breach of the Agreement occurred. In fact, the Agreement was executed approximately nine months before the First Note and more than two years before the Equity Line agreement. It therefore fails to meet the second requirement under section 1823(e)(2). *See Federal Deposit Insurance Corp. v. La Rambla Shopping Center, Inc.,* 791 F.2d 215, 220 (1st Cir.1986) (lease agreement that is subject of defendant's counterclaim was executed two years before note and thus cannot constitute defense against FDIC).

In sum, the common law *D'Oench, Duhme* doctrine protects Plaintiff from Defendant's affirmative defense of set-off and, moreover, Defendant fails to meet all of the four statutory requirements under Title 12 U.S.C. section 1823(e). Accordingly, the Court will grant summary judgment on behalf of Plaintiff for foreclosure of the real estate mortgage under Count I and for action against Joan T. Steeves as co-maker of the First Note and Equity Line under Count III.[13]

### C.

With respect to Defendant Steeves's Counterclaim, the Court similarly finds that the *D'Oench, Duhme* doctrine, and its codification under 12 U.S.C. section 1823(e), bars Defendant's Counterclaim. As the First Circuit has noted: "To distinguish

---

13. The Court will not address the holder-in-due-course doctrine also raised by Plaintiff because it has resolved the issue of Defendant's setoff defense on the basis of the *D'Oench, Duhme* doctrine.

between affirmative claims on one hand, and defenses for purposes of applying the *D'Oench* doctrine would reduce the protection offered by the doctrine to a nullity." *Timberland Design,* 932 F.2d at 49. The court further noted:

> To allow a claim *against* the FDIC asserting the very grounds that could not be used as a defense to a claim *by* the FDIC is to let technicality stand in the way of principle. Moreover, the effect of such an approach would be to reduce actions Congress has allowed the FDIC to pursue to nullities since defendants could counterclaim and recover what they lost.

*Id.* (quoting *Hall v. FDIC,* 920 F.2d 334, 340 (6th Cir.1990) (quoting *Beighley v. FDIC,* 676 F.Supp. 130, 132 (N.D.Tex.1987), *aff'd,* 868 F.2d 776 (5th Cir.1989)).

Under section 1823(e)(2), the Court finds that the subject of Plaintiff's Counterclaim, the Agreement, was not executed contemporaneously with the Note and Equity Line. Because the Agreement does not meet all four requirements set forth under the statute, Defendant's Counterclaim is not enforceable against Fleet Bank. Therefore, the Court will grant summary judgment on behalf of Plaintiff, thereby dismissing the Counterclaim.

### IV. *Conclusion*

Accordingly, it is ORDERED that Plaintiff's Motion for Summary Judgments on Counts I and III be, and it is hereby, GRANTED. It is FURTHER ORDERED that Plaintiff's Motion for Summary Judgment on Defendant Steeves' Counterclaim be, and it is hereby, GRANTED. The request for certification of final judgment under Federal Rule of Civil Procedure 54(b) is hereby DENIED without prejudice to its reassertion on a showing of a proper basis therefor. *See Santa Maria, et al. v. Johns–Manville Sales Corp., et al.,* 808 F.2d 848 (1st Cir.1986).

It is FURTHER ORDERED that judgment shall enter against Defendant Steeves for foreclosure and sale of the realty subject to the mortgage in conformity with Title 14 M.R.S.A. section 6322. It is FURTHER ORDERED that Fleet Bank has first priority on the proceeds of sale and is entitled to any proceeds from the public foreclosure sale.

It is FURTHER ORDERED that, if Defendant does not redeem the Mortgage before the expiration of the ninety-day redemption period, Plaintiff shall then be immediately entitled to exclusive possession of the premises, and the Clerk shall issue a Writ of Possession therefor at the request of Plaintiff.

It is FURTHER ORDERED that judgment shall enter against Defendant Steeves for the amounts due under the First Note and the First Mortgage. Plaintiff's counsel shall propose, on or before February 22, 1992, an order entering final judgment in accordance with the foregoing order for the amount of principal, interest, charges, and attorneys' fees due on the Notes.

Counsel shall confer forthwith and attempt to agree upon collection costs, including reasonable attorneys' fees. If they are unable to agree, the parties shall file, on or before February 22, 1992, written submissions on the issues so generated, and the Court will resolve those issues upon the written submissions.

So ORDERED.