**FLEET BANK OF MAINE, Plaintiff,**

v.

**F. John MATTHEWS and Jacqueline E. Norton, Defendants,**

**Pauline Matthews, Martell Brothers, Inc., Gregory A. Martell, and Joseph L. Martell, Parties-in-Interest.**

**Civ. No. 91–079–P–C.**

United States District Court, D. Maine.

April 29, 1992.

---

Paula Ramsbotham, Thompson, McNaboe, Ashley & Bull, Portland, Me., for plaintiff Fleet Bank of Maine.

Stephen C. Chute, Susan J. Parcels, Portland, Me., for defendant Matthews.

Francis Jackson, Portland, Me., for defendant Martell.

## OPINION

GENE CARTER, Chief Judge.

This case arose out of Plaintiff Fleet Bank of Maine ("Plaintiff" or "Fleet Bank")[1] seeking foreclosure of realty owned by Defendants John Matthews and Jacqueline Norton ("Defendants"), that was provided as collateral for a promissory note ("Note" or "1985 Note") dated May 28, 1985 in the principal amount of $52,000 for which they were comakers. *See* Exhibit 2. Defendants had executed, acknowledged, and delivered to MSB a Mortgage

---

**1.** On February 1, 1991, the Federal Deposit Insurance Corporation ("FDIC") was appointed as Receiver of Maine Savings Bank ("MSB") upon the Maine Superior Court's Issuance of an Order dated February 1, 1991, finding that MSB was insolvent. On the same date, the FDIC as Receiver of MSB, the FDIC as Corporation, and Fleet Bank, a Maine banking corporation, entered into a certain Purchase and Assumption

Agreement whereby Fleet Bank purchased certain assets of MSB and assumed certain liabilities of MSB. Fleet Bank, as assignee of the FDIC in its capacity as Receiver for MSB, has succeeded to MSB's rights, interests and claims with respect to the loans and collateral at issue in this case. On March 9, 1991, Fleet Bank was substituted for MSB as Plaintiff.

Deed ("First Mortgage") covering realty located on Little Sebago Lake in Windham, Maine. *See* Exhibit 3. Plaintiff seeks foreclosure of the First Mortgage and sale of the realty in accordance with 14 M.R.S.A. section 6322 *et seq.*[2]

A bench trial was held on March 5, 1992 on the disputed issues in this case. All of the evidence having now been heard and extensive briefs having been filed, the Court will herein render its Findings of Fact and Conclusions of Law and enter judgment in this case. The Court will render its findings of fact as it discusses the applicable law.

## I. DISCUSSION

Pursuant to Maine law, the Court shall determine (1) whether there has been a breach of condition of the mortgage; (2) the amount due thereon including reasonable attorneys' fees and court costs; and (3) the order of priority and the amount due, if any, to other parties who may appear. 14 M.R.S.A. § 6322 (Supp.1990). For the reasons that follow, the Court finds that Plaintiff has established its affirmative case for foreclosure under Maine law and that Defendant Matthews' affirmative defenses are barred.

### A.

■ With respect to the first element under Maine foreclosure law, the Court finds that Defendants breached a condition of the First Mortgage[3] by failing to make timely payments, as required under the Note.[4] Defendants failed to pay the April

---

**2.** Plaintiff seeks also to foreclose a second mortgage against Defendant Norton on the same property, which was also provided as collateral for an Equity Line of Credit ("Equity Line") in the principal amount of up to $31,300 issued to Norton by MSB on May 2, 1989. *See* Exhibit 4. On the same date, Norton executed, acknowledged and delivered to MSB a Mortgage Deed ("Second Mortgage") covering the realty located on Little Sebago Lake in Windham, Maine. *See* Exhibit 5.

**3.** With respect to the Second Mortgage, Defendant Norton failed to pay the January 22, 1990, February 22, 1990, March 22, 1990, and April 22, 1990 interest installments on the Equity Line when due, and that she had not made any of the payments by May 1, 1990. On that date, MSB sent Norton a Notice of Intention to Foreclose and Accelerate Loan Balance ("Notice"). *See* Exhibit 31. She failed to pay the $1,595.82 to MSB on or before June 1, 1990, as was required to cure her default. The entire balance of the Equity Line became due and payable in full in accordance with the terms of the Equity Line and the May 1, 1990 notice. The Court finds that Norton has violated the conditions of the Second Mortgage by her failure to make payments required under the terms of the Equity Line.

Norton submitted a cashier's check dated July 21, 1990 in the amount of $1,914.56 to MSB. MSB issued Norton a Treasurer's Check in the same amount on July 24, 1990, stating in a cover memo that "[w]e cannot accept payment on the above referenced loan without payment or payment arrangement on the first mortgage.... In order for us to accept the enclosed payment a repayment plan must be in force on the 1st. [sic] mortgage." Exhibit 32.

As of March 16, 1992, there was due and owing from Norton on the Equity Line secured by the Second Mortgage the total principal amount of $31,275, accrued interest totalling $8,183.34, late charges totalling $156.01, plus costs of collection, including reasonable attorneys' fees.

**4.** Plaintiff raised the issue of whether Defendant Matthews has standing to contest the foreclosure of the Second Mortgage, of which Defendant Norton is the sole mortgagor, because he is not a party in any way to the Second Mortgage. Plaintiff's Post Trial Brief at 5. Plaintiff states that "[b]ecause Ms. Norton is in default and has not properly raised any defenses to the foreclosure of the second mortgage, the Court should simply enter a judgment of foreclosure and order of sale on the second mortgage ..." *Id.* at 5.

The Court agrees. Litigants may not assert the "rights or legal interests of others in order to obtain relief from injury to themselves." *See Warth v. Seldin,* 422 U.S. 490, 509, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975); *Amoco Oil Co. v. Dingwell,* 690 F.Supp. 78, 84 (D.Me.1988) (Carter, C.J.), *aff'd,* 884 F.2d 629 (1st Cir.1989) ("Generally, for purposes of standing, a litigant must assert his own legal interest rather than that of a third party."). Although this rule is subject to exceptions, such as where standing may be necessary "when enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' rights," *see Warth,* 422 U.S. at 510, 95 S.Ct. at 2211, the Court finds that such exception is not applicable here.

The Court concludes that Defendant Matthews does not have standing to contest the foreclosure of the Second Mortgage. The Court will enter a judgment of foreclosure and order of sale on the Second Mortgage.

1, 1990, the May 1, 1990, and the June 1, 1990 installments of the Note when due, in the total amount of $3,079.98, including late charges. Furthermore, as of June 21, 1990, they had not made any payments.[5] On that date, MSB sent to Matthews and Norton, each individually, a Notice regarding the nonpayment of the 1985 Note. *See* Exhibit 26.[6] Defendants failed to pay the owed amount to MSB by July 21, 1990 to cure their default. As a result, the entire balance of the Note became due and payable in full in accordance with the terms of the Note and the June 21, 1990 Notice.

Defendant Matthews submitted a check in the amount of $1,424.32 in August 1990 in an attempt to cure the default. This check, however, was submitted past the due date of July 21, 1990, set forth in the Notice. MSB forwarded to Matthews a Treasurer's Check in the same amount dated August 29, 1990, and a cover memo stating that his check's "amount [was] not sufficient to cover [the] scheduled payment" and that because of Defendants' de-

fault, "the returned amount [was] not acceptable at [that] time." *See* Exhibit 27.[7]

■ The Court finds credible the testimony of William Mann, Vice President of Loan Recovery at MSB, that he met with Defendants on August 2, 1990 and proposed that Matthews and Norton be allowed to reserve $3,000 ($1,500 from each of two separate closings) from the sale of their commercial lots to apply either to legal fees owed David Silk, Esq. of the law firm of Curtis, Thaxter, Stevens, Broder & Micoleau, or to the First Mortgage. Mann stated in a follow-up letter dated August 6, 1990 that if Defendants elected to use the money for payment of their residential mortgages, they would have to "execute a deed in lieu of foreclosure as well as a stipulation to a final judgment of foreclosure on the camp property," both to be held in escrow until September 15, 1990 when it was expected that both the First and Second Mortgages would be brought current. *See* Exhibit 15. He extended this offer again in a letter dated September 26, 1990. *See* Exhibit 18.[8] Upon the closing

---

5. MSB had previously sent letters dated May 23, 1990, *see* Exhibit 24, and June 14, 1990, *see* Exhibit 25, informing Defendants of their past-due payments on the 1985 Note.

6. The Notice explicitly states:
 NOTICE IS HEREBY GIVEN that in the event you do not cure the default by payment of the amount due within thirty (30) days, as provided herein, the entire loan balance will be due and foreclosure proceedings will be instituted against you without further notice. Thus, your ownership of the mortgaged premises may terminate as a result of the foreclosure proceedings.
 Exhibit 26, ¶ 4.
 While acknowledging that the arrearages owed were not paid by the specified due dates, Defendant Matthews argues that Plaintiff's acceleration of the First Mortgage was improper because of faulty notice. The First Mortgage's acceleration clause reads as follows: "If the breach is not cured on or before the date specified in the Notice, Lender at Lender's option may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand, and may invoke any of the remedies permitted by applicable law." Exhibit 3, ¶ 18.
 The Court finds that Plaintiff provided Defendants with notice of acceleration of the First Note and disagrees with Defendant's assertion that such notice was faulty. *See* Exhibit 26.

The Court notes that Plaintiff also properly notified Defendant Norton of the acceleration of the Equity Line. *See* Exhibit 31.

7. On June 10, 1985, Matthews and Norton formed Jen Company ("Jenco") as a partnership to buy and sell real estate. MSB had issued four other promissory notes as commercial loans to Defendants, as Jenco, on February 11, 1988, April 15, 1988, June 28, 1988, and April 14, 1989. *See* Exhibits 10–13. Defendants had difficulty making their payments on these notes, so MSB brought an action against Jenco for the commercial debts. The case was settled, as evidenced by a Settlement Agreement ("Agreement" or "Settlement Agreement") dated March 23, 1990. *See* Exhibit 9. On the same date, Defendants also gave a junior mortgage, *see* Exhibit 8, to secure these four promissory notes.
 The Court finds that the Settlement Agreement had no bearing on the two residential loans at issue in this case. Defendant Matthews refers to paragraphs 1.5 and 1.6 of the Agreement as evidence that the realty of the First and Second Mortgages was used as security for the Settlement Agreement. *See* Exhibit 9. The Court rejects such a reading as incorrect and concludes that there is nothing in the Settlement Agreement that even remotely proposes settlement of the First and Second Mortgages.

8. The letter stated in pertinent part: "[W]e would ask that you again give serious considera-

of the two properties, Defendants elected to make the two $1,500 payments to David Silk. *See* Exhibits 41–43. As a result, Defendants never accepted MSB's offer because they elected to allow Silk to receive the two payments, and they never gave Plaintiff a deed in lieu of foreclosure.

 Defendant Matthews raises the affirmative defense of waiver to his breach, based on his assertion that MSB waived Defendants' defaults on two grounds; namely, that MSB allegedly agreed to forbear from foreclosure in exchange for future arrearage payments derived from the proceeds of the sale of commercial lots owned by Defendants, and that MSB accepted post-default arrearage payments.[9] The Court concludes that Defendant's waiver defense on the first ground is barred as a matter of law by the protection of the *D'Oench, Duhme* doctrine and its statutory codification under 12 U.S.C. section 1823(e).

The *D'Oench, Duhme* doctrine, a federal common law estoppel doctrine, prohibits borrowers or guarantors from using secret or unrecorded side agreements to defend against efforts by the FDIC or its assignees to collect on promissory notes that it has acquired from a failed bank. *See D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942). This Court has invoked the doctrine in favor of the FDIC or its assignees, including private third parties, to prohibit makers of facially unqualified notes from using side agreements, written or oral, to defend against efforts by the FDIC or its assignees to collect on such notes. *See,*

*e.g., Fleet Bank of Maine v. Steeves*, 785 F.Supp. 209, 215–16 (D.Me.1992); *Fleet Bank of Maine v. Wilson*, 780 F.Supp. 841, 846 (D.Me.1991); *New Maine National Bank v. Benner*, 774 F.Supp. 36, 39 (D.Me. 1991); *Bateman v. FDIC*, 766 F.Supp. 1194, 1199 (D.Me.1991); *New Maine National Bank v. Seydler*, 765 F.Supp. 770, 773–74 (D.Me.1991). *See also FSLIC v. Griffin*, 935 F.2d 691, 698 (5th Cir.1991); *FDIC v. Newhart*, 892 F.2d 47, 50 (8th Cir.1989); *Adams v. Walker*, 767 F.Supp. 1099, 1106 (D.Kan.1991); *Adams v. Madison Realty & Development, Inc.*, 746 F.Supp. 419, 430 (D.N.J.1990). As this Court noted in *Bateman*, the *D'Oench, Duhme* doctrine bars the assertion of most defenses, including waiver and estoppel, to facially unqualified notes. 766 F.Supp. at 1200 n. 7.

The Court has applied the common law doctrine's codification in 12 U.S.C. section 1823(e) to third-party assignees of the FDIC. *See Steeves*, 785 F.Supp. at 215–16; *Wilson*, 780 F.Supp. at 845. *See also Madison Realty & Development*, 746 F.Supp. at 430; *Deposit Guaranty Bank v. Hall*, 741 F.Supp. 1287, 1290 (S.D.Tex.1990). Agreements must meet all four requirements set forth under 12 U.S.C. section 1823(e) to preclude its application.[10] *See, e.g., FDIC v. Rivera–Arroyo*, 907 F.2d 1233, 1236 (1st Cir.1990); *FDIC v. P.L.M. International, Inc.*, 834 F.2d 248, 253 (1st Cir.1987).

Here, with respect to his affirmative defense of waiver relating to MSB's alleged agreement to forebear, Matthews relies on the Settlement Agreement, *see* Exhibit 9,

tion to our prior request that you deed this property to the Bank in lieu of foreclosure." Exhibit 18.

**9.** The Maine Law Court has defined waiver as the voluntary or intentional relinquishment of a known right that may be inferred from the acts of the waiving party. *See Kirkham v. Hansen*, 583 A.2d 1026, 1027 (Me.1990).

**10.** Under 12 U.S.C. § 1823(e):

No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section, or Section 1821 of this title, either as security for a loan or by purchase or as receiver of any

insured depository institution, shall be valid against the Corporation unless such agreement
1) is in writing;
2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution;
3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee; and
4) has been, continuously, from the time of its execution, an official record of the depository institution.

correspondence drafted by MSB stating that it would forbear from foreclosure if Defendants provided a deed in lieu of foreclosure, and an alleged oral agreement between MSB and Defendants to prove this affirmative defense. Both the Settlement Agreement and written correspondence, however, are barred by the D'Oench, Duhme doctrine as collateral side agreements and by 12 U.S.C. section 1823(e) for failure to comply with all four of the statute's requirements.[11] These writings were not executed contemporaneously with the acquisition of the facially unqualified Notes in question, by MSB.[12] Moreover, as William Mann credibly testified, the Agreement was neither approved by the MSB's Board of Directors or its loan committee nor reflected in the minutes of said board or committee. Any alleged oral agreements offered by Defendants as evidence that contradicts Plaintiff's offer to forebear as conditional upon a deed in lieu of foreclosure are also barred by both the D'Oench, Duhme doctrine and 12 U.S.C. section 1823(e) as oral side agreements.

Defendant also contends that MSB's conduct in accepting late post-default arrearage payments, see Exhibits 27 and 32, constitutes waiver of the right to foreclose. He relies on the Maine Law Court opinion in Savings & Loan Association v. Tear, 435 A.2d 1083 (Me.1981), for the proposition that a mortgagee waives its right to foreclose if it accepts tender of a late payment.

The Court finds that the Tear case is distinguishable from the instant case on several grounds. First, in Tear, there had been a prior course of dealing in which the borrowers tendered late payments on the loan account that were accepted by the savings and loan association ("S & L"). Id. at 1084. Here, MSB had never previously accepted a late payment. Second, the S & L did not effectively refund to the Tears their tendered payment because the S & L returned to them a "restrictively indorsed instrument that had become to Tear a worthless piece of paper." Id. at 1086.[13] Here, Defendants did get their money back in the form of certified checks payable to Matthews and Norton. See Exhibits 27 and 32. Third, in Tear, there was no acceleration of the underlying obligation. Id. at 1084–85. Here, acceleration of the First Mortgage occurred on July 21, 1990, but Defendants did not make payments until August 1990. In light of the First Mortgage's acceleration, only payment of the entire amount owed, not merely the amount of the payments in arrears, could cure Defendants' default.[14] Thus, the

**11.** The Court also notes that, with respect to the Settlement Agreement, it has no relationship to the First and Second Mortgages of Defendants. With respect to the correspondence between MSB and Defendants regarding a deed in lieu of foreclosure, Defendants never provided such a deed to MSB and, therefore, never accepted MSB's offer.

**12.** The Agreement, for example, was dated March 23, 1990 while the 1985 Note and Equity Line were dated May 28, 1985 and May 2, 1989, respectively.

**13.** In Tear, Mr. Tear tendered a money order for $317 and cash of 27 cents. 435 A.2d at 1084–85. A S & L teller accepted the money order and stamped "FOR DEPOSIT ONLY IN 52–33" on the reverse. Later that day, S & L returned by certified mail the stamped money order to Mr. Tear, along with a letter informing him that the agreement was broken and that S & L was going to evict him. Id. at 1085.

**14.** Even if the payment of arrearages alone would suffice to cure the default after acceleration, arrearages must be paid in full for a waiver to result. See, e.g., Lively v. Drake, 629 S.W.2d 900 (Tenn.1982); United States Savings Bank v. Continental Arms, Inc., 338 A.2d 579 (Del.Super.1975). Matthew's payment of $1,424.32, see Exhibit 27, was insufficient to discharge all arrearages because, as of July 1, 1990, arrearages totalled $4,079.98, see Exhibit 26.

Similarly, Norton's payment of $1,914.46 was insufficient to discharge all arrearages because this payment was due on or before June 22, 1990 but Norton did not tender her payment until July 21, 1990. See Exhibit 32. Even if her payment had been sufficient in amount, it still could not have cured the default on the Second Mortgage because of the existing default on the First Mortgage. That is, the Second Mortgage states: "I am in default if I break any promises under this mortgage or the Note. I am also in default if I break any of the promises given to the holder of my first mortgage, if breaking those promises significantly impairs my prospect of repayment or jeopardizes your interest in the property." Exhibit 5, ¶ 3.

Court finds that the *Tear* case is distinguishable from the instant case and concludes that MSB did not waive its right to foreclose by its conduct in accepting the late payments.[15]

In asserting waiver as an affirmative defense (under Federal Rule of Civil Procedure 8(c)), Defendant Matthews has failed to meet his burden in showing MSB's "voluntary or intentional relinquishment of a known right." *See Kirkham*, 583 A.2d at 1027 (quoting *Interstate Industrial Uniform Rental Service, Inc. v. Couri Pontiac, Inc.*, 355 A.2d 913, 919 (Me.1976)). Furthermore, Defendant's waiver defense is barred as a matter of law by the *D'Oench, Duhme* doctrine and 12 U.S.C. section 1823(e). Therefore, the Court concludes that Defendant Matthews is estopped from asserting his waiver defense to the breach of the Note.

### B.

With respect to the second element under 14 M.R.S.A. section 6322, the Court finds credible the testimony of Donna Stackpole, a loan recovery officer at RECOLL Management Corporation, that, as of March 4, 1992, Defendants Matthews and Norton owed the following under the First Mortgage: $43,546.39 in principal; $7,111.96 in interest; $538.68 in late charges; and $282.04 in expenses, for a total of $51,479.07, plus costs of collection, including reasonable attorneys' fees.[16]

The Court has discretion to determine reasonable attorneys' fees. Lawrence Clough, billing attorney for Plaintiff's law firm, testified as to the breakdown of attorneys' fees in this case. He testified that the charges are fair and reasonable and that the work was necessary to bring the action to litigation at the time of the bench trial. The Court notes, however, that he is the billing attorney for the firm upon whose behalf he testified as an expert. This Court's role "as the guarantor of fairness obligates it not to accept uncritically what lawyers self-servingly suggest is reasonable compensation for their services." *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir.1991).

Defendant Matthews should be charged in this case solely for attorneys' fees and costs pertaining to the First Mortgage, not to the Second Mortgage, Third Mortgage,[17] or to the Settlement Agreement. Lawrence Clough testified on redirect examination that none of these fees and costs related to the Settlement Agreement. Plaintiff's counsel must ensure that it does not charge Defendant Matthews for attorneys' fees and costs other than those relating to the First Mortgage.

According to Plaintiff, Defendants owed, as of March 3, 1992, a total of $13,885.66 in attorneys' fees.[18] Defendant Matthews contested these attorneys' fees on several grounds. First, he disputed fees related to the criminal complaint that he filed in response to Plaintiff's effort to

---

**15.** Defendant's waiver defense based on Plaintiff's conduct outside the Notes in accepting late payments is also barred by the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). *See FSLIC v. Locke*, 718 F.Supp. 573, 582 (W.D.Tex.1989); *FDIC v. MM & S Partners*, 626 F.Supp. 681, 688 (N.D.Ill.1985).

**16.** With respect to the amounts owed by Defendant Norton on the Equity Line secured by the Second Mortgage, based on Ms. Stackpole's testimony, the Court finds that, as of March 4, 1992, Defendant owed the following amounts: $31,275.00 in principal; $8,183.34 in interest; and $156.01 in late charges, for a total of $39,614.35, plus costs of collection, including reasonable attorneys' fees.

**17.** On March 23, 1990, Defendants executed, acknowledged and delivered to MSB a Third Mortgage covering the property subject to the First

Mortgage. As of March 16, 1992, there was due and owing under the Third Mortgage $80,000 in principal and $5,094 in interest, for a total of $85,094, plus attorneys' fees. The Third Mortgage is not a subject of this litigation.

**18.** The Court has not been provided with any billing records past the invoice dated February 11, 1992, *see* Exhibit 14, but Plaintiff's counsel has billed for fees and costs through March 3, 1992. At trial, Lawrence Clough testified that attorneys' fees totalled $7,346.50 and costs totalled $797.91, for a total of $8,144.41 through February 1, 1992. He also testified that attorneys' fees totalled $5,601.25 and costs totalled $140 from February 2 through March 3, 1992, for a total in attorneys' fees and costs of $13,885.66.

foreclosure on his Little Sebago Lake property.[19] Defendant's criminal complaint was filed as a result of Plaintiff's alleged criminal trespass to appraise Defendant's Little Sebago Lake property as part of its attempts to foreclose the mortgage of that property. The Court finds these attorneys' fees to be proper charges because they are reasonably related to Plaintiff's efforts to foreclose in this case.

■ Defendant Matthews also contested the amount of attorneys' fees charged for the bankruptcy proceedings. In light of the fact that the bankruptcy stay was contested by Defendant, the Court finds that the fees in that matter were reasonable.

■ Although not specifically raised as concerns by Defendant, the Court finds that certain fees and costs billed by Plaintiff's counsel are unreasonable. Plaintiff's counsel billed a total of $135 in paralegal fees. *See* Exhibit 14. This Court has previously disallowed charges attributed to paralegals. *See Auburn Police Union v. Tierney*, 762 F.Supp. 3, 5 (D.Me.1991). Specifically, the Court stated:

> This Court does not permit such charges to be the subject of reimbursement or of allowance of counsel fees generally since the Court is of the view that such charges are properly includable in firm overhead. The individuals for whom the charges are made are not fully licensed professionals and much of their time and effort is duplicated by the supervisory and review roles of more experienced, licensed counsel in making use of their work product.

*Id.*[20] The Court will also disallow the $135 attributed to paralegals in this case.[21]

The Court also finds that office costs totalling $565 in "office copy expense" are unreasonable. Plaintiff's counsel fails to indicate in their billing records the rate per page for copies. As a result, the Court cannot determine whether either the rate or the number of pages is reasonable. *See Timberland Design, Inc. v. FDIC*, 745 F.Supp. 784, 789–90 (D.Mass.1990), *aff'd*, 932 F.2d 46 (1st Cir.1991). Nonetheless, the Court finds that office copy expense totalling $565 for a case of this limited magnitude is unreasonable and it will reduce such costs by eighty percent, a reduction totalling $452, for a revised total cost for this item of $113.

In submitting a proposed attorneys' fees and costs' award to this Court, Plaintiff's counsel should make the appropriate adjustments to such award as noted above by the Court.

## C.

■ With respect to the third element under Maine's foreclosure statute regarding order of priority, the Court finds that the *ex parte* attachment of Gregory and Joseph Martell ("Martell Brothers") as the Parties-in-Interest has been effectively dissolved and that they have no legal interest in the realty in this case. The Cumberland County Superior Court, by Order of Justice Fritzsche dated February 9, 1990, dissolved the *ex parte* attachment to Defendants' property that is the subject of Plaintiff's foreclosure action. *See* Exhibit 38. An Order of Justice Perkins dated March 27, 1990 limited the attachment to property owned by Defendants located at 42 Penrith Road, Portland, Maine. *See id.* The dissolution of the *ex parte* attachment was appealed to the Law Court, but it dismissed the Martell Brothers' appeal for want of prosecution. *See id.*

Stephen Devine, Esq., testified that the dissolved attachment interest was intended to be revitalized by an alleged oral agreement between Francis Jackson, Esq. and himself. Both Devine and Jackson conceded that the oral private agreement be-

---

**19.** Specifically, Defendant contested the billing entries dated May 2, 1991, June 5, 1991, and September 16, 1991.

**20.** The Court there described these nonlicensed personnel as "law clerks," because that was the nomenclature used for them by counsel in that case. They were, in fact, paralegals. The reasoning of that case applies to the instant case.

**21.** The Court notes that, in addition to its excluding any paralegal fees through February 12, 1992, it will further disallow any such fees billed after February 12, 1992.

tween them was not memorialized in a writing. The Court finds that the attachment was effectively discharged and that the alleged oral agreement is barred by the Maine Statute of Frauds. *See* 33 M.R.S.A. § 51(4) (1988). The Court concludes that the Martells no longer have any legal interest in the realty in question, and that they are owed nothing in relation to this realty under 14 M.R.S.A. section 6322.

### D.

Defendant Matthews argues that Plaintiff has violated FDIC procedures or regulations. There is no evidence in the record, *see* Exhibit 39, nor in the direct or cross-examination of Ms. Stackpole, that supports Defendant's assertion regarding such violations. Defendant has failed to show not only that Plaintiff violated certain FDIC procedures or regulations but also that any such procedures or regulations barring the prosecution of this lawsuit even exist. Thus, the Court disagrees with Defendant's contentions in this regard.

## II. ORDER

### A.

Accordingly, it is ORDERED that judgment shall enter against Defendants Matthews and Norton for the amounts due and owing under the Note and the First Mortgage in the principal amount of Forty-Three Thousand Five Hundred Forty-Six Dollars and Thirty-Nine Cents ($43,546.39), plus accrued interest, charges, expenses and reasonable attorneys' fees. It is FURTHER ORDERED that judgment shall enter for foreclosure and sale of the realty subject to the First Mortgage in conformity with 14 M.R.S.A. section 6322. If Defendants do not redeem the First Mortgage before the expiration of the 90-day redemption period, Plaintiff shall then be immediately entitled to exclusive possession of the premises, and the Clerk shall issue a Writ of Possession therefor at the request of Plaintiff.

### B.

It is FURTHER ORDERED that judgment shall enter against the interest of Defendant Norton in the subject premises for the amounts due and owing under the Equity Line and the Second Mortgage in the principal amount of Thirty-One Thousand Two Hundred Seventy-Five Dollars ($31,275), plus accrued interest, charges, and reasonable attorneys' fees.

### C.

It is FURTHER ORDERED that Fleet Bank has first priority on the proceeds of sale and is entitled to any proceeds from the public foreclosure sale. Defendants are entitled to any proceeds from the public foreclosure sale that remain after Plaintiff has satisfied the foregoing claims.

### D.

It is FURTHER ORDERED that, with respect to both the Note and First Mortgage, and the Equity Line and Second Mortgage, Plaintiff's counsel submit, on or before May 13, 1992, a proposed judgment for consideration by the Court for the amount of principal, interest, charges, and reasonable attorneys' fees due on both the Note and the Equity Line, also setting forth authority for foreclosure of each mortgage. With respect to the proposed judgment, counsel shall confer forthwith and attempt to agree upon collection costs, including reasonable attorneys' fees, bearing in mind the Court's decisions in the foregoing opinion in respect thereto. They shall file, on or before May 13, 1992, written submissions on the issues generated in respect to assessment of reasonable attorneys' fees or an agreed-upon resolution of such issues, including the adjustments already noted by the Court. In the absence of agreement, the Court will resolve any such issues upon the written submissions.